[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 8, 2010
JOHN LEY
CLERK

No. 09-10091
Non-Argument Calendar

_____

D. C. Docket No. 07-00239-CR-BBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellant
Cross-Appellee,

versus

TYWAN L. WILLIAMS,

Defendant-Appellee
Cross-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Georgia

_____

(December 8, 2010)

Before BLACK, PRYOR and ANDERSON, Circuit Judges.

PRYOR, Circuit Judge:

The central issue in this appeal by the government is whether the district court erred when it reduced Tywan Williams's sentence for acceptance of responsibility after he withdrew his plea of guilty, declared at trial that he was factually innocent, and was found guilty by a jury. The government also argues that Williams's sentence should have been enhanced for obstruction of justice because he committed perjury. We agree with the government about both issues. Williams's denial of wrongdoing forecloses a reduction for acceptance of responsibility, and his testimony that he thought he was evading carjackers is irreconcilable with the evidence that the jury credited about federal agents identifying themselves to Williams. Williams also cross-appeals about a jury instruction that he did not challenge at trial and in which we find no reversible error. We affirm Williams's convictions, but we vacate Williams's sentences and remand for resentencing.

## I. BACKGROUND

Williams was charged in a three-count indictment for forcibly assaulting, resisting, opposing, impeding, intimidating, or interfering with three United States Marshals. 18 U.S.C. § 111(a)(1), (b). The indictment alleged that Williams "rammed his Cadillac Escalade vehicle, a deadly and dangerous weapon" into a Dodge Durango vehicle, a Ford F-150 truck, and a Ford Expedition vehicle while

those vehicles were being "driven by a law enforcement officer." After he reached an agreement with the government, Williams entered a plea of guilty to assaulting the marshal who drove the Dodge Durango vehicle, but the district court later allowed Williams to withdraw his plea of guilt because of his dissatisfaction with his potential sentence.

The evidence presented at trial established that Williams was a fugitive and tried to elude federal marshals when they attempted to arrest him. In 2005, after a North Carolina court issued a warrant for his arrest, Williams agreed to surrender, but never did so. Officers made several unsuccessful attempts to arrest Williams, and later transferred the matter to the United States Marshals Service. Armed with information that Williams had traveled repeatedly to Atlanta, Georgia, and with a second arrest warrant issued by a Georgia court, federal marshals searched for Williams.

In January 2007, Anthony Simpson, a deputy United States Marshal, and two deputies of the Cobb County Sheriff's Department observed a Cadillac Escalade vehicle in the parking lot of an apartment complex in Atlanta. The vehicle, which was painted a maroon color, matched the description of Williams's vehicle. The officers attempted to follow the vehicle, but were separated from the vehicle in traffic.

The next day, Simpson and other federal marshals returned to the apartment complex to search for Williams's vehicle. The marshals were clad in bulletproof vests that stated they were members of the Southeast Regional Fugitive Task Force, and the marshals were driving unmarked vehicles that were equipped with blue lights in the front and rear windshields, front and rear strobe lights, and sirens. After receiving a report that Williams was at a local British Petroleum gas station, the marshals drove to the station.

Deputy Marshal Wayne Warren and other federal marshals parked their vehicles in a line in the parking lot of the gas station. Williams saw the marshals and ran to his Escalade vehicle. Warren activated the emergency lights in his Dodge Durango vehicle and parked parallel to Williams to block his escape. Williams drove his Escalade vehicle in reverse and, as Warren tried to prevent an escape, Williams rammed the rear of Warren's Durango vehicle repeatedly. Warren stopped his vehicle momentarily and watched Williams strike the front end of Deputy Marshal Nana Joyner's Ford F-150 truck and Deputy Marshal Brad Bennett's unmarked Ford Expedition vehicle as it entered the parking lot with its lights and sirens activated. Warren repositioned his Durango vehicle to block the exit, but Williams struck the vehicle a second time and drove out of the parking lot into oncoming rush-hour traffic.

Several federal marshals, including Warren and Simpson, pursued Williams with their sirens and emergency lights activated. The marshals followed Williams's speeding vehicle on a ramp that led to Interstate 285. To compensate for his speed, Williams made a wide turn onto the ramp that allowed Warren to maneuver beside Williams. Williams rammed Warren's Durango vehicle, and Warren struggled to keep his vehicle on the ramp and away from the edge of an embankment that was 75 feet off the ground. After Warren regained control of his vehicle, Williams forced Warren's speeding vehicle to scrape against the barrier wall long enough to produce sparks.

Warren fired two rounds of ammunition from his gun at Williams, and a bullet struck Williams in the eye. Williams lost control of his vehicle, but Warren pinned the vehicle against a retaining wall. Federal marshals broke the windows of Williams's vehicle, deflated its airbags, and removed Williams from the vehicle.

Williams testified that he did not realize his pursuers were federal marshals until they broke the windows of his vehicle. Williams said he thought the marshals were carjackers because he had noticed a sport utility vehicle with tinted windows following him and the other vehicles had been unmarked and lacked emergency lights. Williams stated that a vehicle hit his Escalade vehicle while he was backing out of his parking space at the gas station, which caused the side airbags in his

5

vehicle to deploy and limited his vision. Williams testified that several vehicles struck his Escalade vehicle, but he alleged that he did not see emergency lights on the vehicles or hear any emergency sirens. When Williams tried to drive out of the parking lot, he swerved to avoid colliding with a black sport utility vehicle, which forced him into oncoming traffic. Williams asserted that he had been shot before he reached the ramp and had lost control of his vehicle, and he denied trying to force Warren off the ramp.

Williams admitted there was an outstanding warrant for his arrest, but he testified that he did not believe officers were looking actively for him. Williams testified that a year earlier a police officer agreed not to "pressure" Williams and to allow him to "get [his] things together before [he] surrender[ed][.]" When asked why he was in possession of another man's driver's license and driving someone else's vehicle, Williams responded that the man was a "family member" for whom he had "probably" been "keeping [the license] safe" and his girlfriend had allowed him to drive her rental vehicle.

After the district court granted Williams's motion for an acquittal for assaulting Deputy Marshal Joyner by striking her Ford F-150 truck, the district court submitted the two remaining charges to the jury. The jury found Williams guilty of assaulting Marshals Warren and Bennett by striking their Dodge Durango

6

and Ford Expedition vehicles.  18 U.S.C. § 111(a)(1).  The jury also found that Williams was subject to an enhanced penalty because he "use[d] a deadly or dangerous weapon" to assault Marshal Warren.  Id. § 111(b).

At sentencing, the district court relied on a presentence report that had been prepared after Williams had pleaded guilty.  The presentence report recommended that Williams receive a three-point reduction in his offense level for acceptance of responsibility.  See U.S. Sentencing Guidelines Manual § 3D1.1 (2007).  The report classified Williams as a career offender and, with a total offense level of 29 and criminal history of VI, the report provided a sentencing range of 151 to 188 months of imprisonment.

The district court ruled that Williams was entitled to a two-point reduction for acceptance of responsibility.  See id. § 3D1.1(a).  The district court stated it would not "punish[] [Williams] for exercising his constitutional right to go to trial," but the government objected and argued that Williams never accepted responsibility for his actions.  The government also requested that the district court increase Williams's offense level by two points for obstructing justice by committing perjury.  See id. § 3C1.1.

The district court denied the motion of the government to increase Williams's offense level for obstruction of justice based on its finding that

Williams did not commit perjury.  The district court found that Williams's

testimony did not contradict the testimony of the federal marshals:

> Well, certainly Mr. Tywan Williams' testimony didn't contradict the testimony of either [Marshal Joyner or Marshal Bennett] because they weren't here to testify.  The three witnesses who were at the scene, as so often happens, all had varying accounts of what happened out there.  I mean, different people see different things.  Different people experience things in a different way.  I did not find Mr. Tywan Williams' testimony to be materially different from any of those witnesses.  And certainly in light of the fact that this whole incident resulted in him being shot in the head, he, I think, is entitled to some leeway regarding his memory of the sequence of events.  But in terms of a requirement in order to impose this enhancement that I make a finding that he committed perjury, I am simply unable to do so based on the testimony that I heard in comparison with the other testimony at trial and what I know about this, so I'm not going to impose the enhancement for obstruction of justice.

The district court also denied the motion of the government to deny

Williams a reduction for acceptance of responsibility.  The district court reiterated

that Williams's testimony had not been "markedly different" from the testimonies

of the government witnesses:

> So the commentary talks about things I need to consider on this issue of acceptance of responsibility.  Again, my observation was that Mr. Tywan Williams got on the stand and really told about the conduct that comprised the offense that he was convicted of.  And, again, I didn't see that his testimony was that markedly different from the testimony of the officers or other observers.  I think particularly in this case where he was shot, his ability to have his own trial and tell his story was important.  I mean, I consider that an important part of my job, is to provide trials to people who have a story that legitimately

needs telling, and I think he falls in that category and I'm going to award the two points off for acceptance of responsibility.

The district court calculated a total offense level of 30, which provided a sentencing range of 168 to 210 months of imprisonment. The government requested a sentence at the high end of the sentencing range and stressed that the "jury rejected the notion that [Williams's crimes] [were] somehow a mistake . . . ." The government argued that "the jury concluded . . . that in this case federal officers were resisted by Mr. Tywan Williams, that he knew they were officers and instead he assaulted them by use of a deadly weapon, and that is something that needs to be deterred and needs to be deterred in a serious fashion." Williams responded that he was "not guilty," was "shot . . . for no reason," and was punished sufficiently by the loss of one eye. The district court varied downward from the advisory guideline range and sentenced Williams to 120 months of imprisonment.

## II. STANDARDS OF REVIEW

One standard of review governs the two issues raised by the government, and another standard governs the cross-appeal by Williams. A determination of whether a defendant accepted responsibility for his crimes is reviewed for clear error. United States v. Amedeo, 370 F.3d 1305, 1320 (11th Cir. 2004). That standard of review also governs our review of the factual findings for an enhancement for obstruction of justice. United States v. Bradberry, 466 F.3d 1249,

9

1253 (11th Cir. 2006). "[J]ury instructions that are challenged for the first time on appeal are reviewed for plain error." United States v. Felts, 579 F.3d 1341, 1343 (11th Cir. 2009).

## III. DISCUSSION

Our discussion of this appeal is divided into three parts. We first discuss Williams's argument, made for the first time on appeal, that the district court erred by instructing the jury to find that Williams acted knowingly and willfully. We next discuss the argument of the government that the district court clearly erred by crediting Williams for accepting responsibility. We last discuss whether Williams's sentence should be enhanced for obstructing justice.

*A. The District Court Did Not Plainly Err in Instructing the Jury.*

Williams argues that the district court directed the jury "to find that Mr. Williams acted knowingly and willfully," but we disagree. The district court told the jury that Williams could be found guilty if the jury found "beyond a reasonable doubt that Mr. Williams acted knowingly and willfully." "[W]e will not reverse a conviction on the basis of a jury charge unless 'the issues of law were presented inaccurately, or the charge improperly guided the jury in such a substantial way as to violate due process,'" United States v. Prather, 205 F.3d 1265, 1270 (11th Cir. 2000) (quoting United States v. Arias, 984 F.2d 1139, 1143 (11th Cir. 1993)), and

10

the instruction read by the district court provided a correct statement of the law about the standard of proof required to convict Williams. The district court did not plainly err when it instructed the jury.

*B. The District Court Erred By Reducing Williams's Sentence for Accepting Responsibility.*

The government argues that the district court erred by awarding Williams a two-point reduction for acceptance of responsibility. We agree. To be eligible for the reduction, a defendant must "clearly demonstrate[] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). As denoted by its plain language, the reduction is intended to reward defendants who express contrition for their wrongdoing and evidence a desire to reform their conduct. United States v. Henry, 883 F.2d 1010, 1011–12 (11th Cir. 1989).

The record establishes that Williams's conduct is wholly inconsistent with any acceptance of responsibility. We have held that it is erroneous to award a reduction for acceptance of responsibility when a defendant denies guilt in the face of evidence to the contrary, see United States v. Caraballo, 595 F.3d 1214, 1233 (11th Cir. 2010); see also United States v. Starks, 157 F.3d 833, 840–41 (11th Cir. 1998), which is exactly what Williams did. Williams admitted he was guilty initially, but withdrew his plea and, despite overwhelming evidence to the contrary, insisted at trial and at sentencing that he was factually innocent. Williams's

11

actions are indistinguishable from those of the defendant in United States v. Rubio, 317 F.3d 1240, 1243–44 (11th Cir. 2003), where we affirmed the denial of a reduction because the defendant withdrew his plea of guilty and "thereafter steadfastly failed to accept responsibility further" by "put[ting] the government to its proof and consistently attempt[ing] to minimize his role." Because the "adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt[] [and] is convicted[,]" U.S.S.G. § 3E1.1 cmt. n.2, the district court clearly erred by awarding Williams a reduction for acceptance of responsibility.

Williams argues that the error is harmless, but we disagree. Although the district court stated that it thought a ten-year sentence was reasonable, the court did not state that it would impose the same sentence even if it erred in calculating the applicable advisory guideline range. See United States v. Barner, 572 F.3d 1239, 1248 (11th Cir. 2009).

*C. The District Court Also Erred By Refusing to Enhance Williams's Sentence for Obstructing Justice.*

We also agree with the argument of the government that the district court erred by failing to enhance Williams's sentence for an obstruction of justice. A defendant is subject to enhancement of his sentence if he "willfully obstruct[s] or impede[s], or attempt[s] to obstruct or impede, the administration of justice with

respect to the investigation, prosecution, or sentencing of the instant offense of conviction." U.S.S.G. § 3C1.1. The enhancement is applicable if a defendant commits perjury. Id. § 3C1.1 cmt. n.4(B).

Williams's testimony that he did not recognize his pursuers as federal marshals is irreconcilable with the record. The jury credited the evidence presented by the government and found, for good reason, that Williams assaulted two federal marshals. Federal marshals testified that they wore vests that clearly identified them as law enforcement officers, at least one marshal attempted to approach Williams, and the marshals activated emergency lights and sirens that an eyewitness testified made the vehicles recognizable to the public. Williams testified that he did not intend to assault the officers, but the evidence established that Williams used his vehicle as a battering ram to escape from the parking lot of the gas station and to attempt to force Warren's vehicle off a high ramp. At sentencing Williams insisted stubbornly that he was innocent of wrongdoing and the marshals were to blame for the incident.

"Perjury under oath on material matters, not due to confusion or mistake, justifies" an enhancement for obstruction of justice. United States v. Geffrard, 87 F.3d 448, 453 (11th Cir. 1996). Williams's incredible testimony, in the light of all the credible evidence to the contrary, leaves us "with the definite and firm

13

conviction" that the sentencing court should have enhanced Williams's sentence. United States v. Poirier, 321 F.3d 1024, 1036 (11th Cir. 2003). The "inexplicable finding" of the district court that Williams "did not obstruct justice is clearly erroneous, and must be corrected on remand." Id.

## VI. CONCLUSION

We **AFFIRM** Williams's convictions for assaulting a federal officer, but we **VACATE** Williams's sentence and we **REMAND** for the district court to resentence Williams.

**AFFIRMED IN PART, AND VACATED AND REMANDED IN PART**.