[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 10-10524 & 10-10822
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 28, 2011
JOHN LEY
CLERK

D.C. Docket No. 6:09-cr-00108-ACC-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARRY S. MARTIN,

Defendant-Appellant.

_____

Nos. 10-10624 & 10-10889
Non-Argument Calendar

_____

D.C. Docket No. 6:08-cr-00219-ACC-GJK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

GARY MARTIN,

Defendant-Appellant.

———————————————

Appeals from the United States District Court
for the Middle District of Florida

———————————————

(September 28, 2011)

Before HULL, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Garry Martin appeals his conviction for conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), and the revocation of his term of supervised release under 18 U.S.C. § 3583(e)(3).[1] Martin contends that the government breached his plea agreement by failing to make certain sentencing recommendations. He also asserts that the probation officer acted vindictively by increasing his base offense level after he moved to withdraw his guilty plea. Finally, Martin argues that the district court abused its discretion by refusing to permit him to withdraw his guilty plea. For the reasons stated below, we affirm.

———————————————

[1]This consolidated appeal involves two related criminal proceedings. In Case No. 6:09-cr-108, Martin pled guilty to one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). In Case No. 6:08-cr-219, the district court revoked Martin's term of supervised release for an earlier mortgage fraud conviction.

2

I.

In 2006, Martin was convicted of mortgage fraud in the Eastern District of New York. After he completed his prison sentence, his supervised release was transferred to the Middle District of Florida. In 2008, a probation officer petitioned the district court to issue a warrant for Martin's arrest. The probation officer explained that Martin had violated the terms of his supervised release by engaging in a new mortgage fraud scheme. The district court issued the warrant, and Martin was placed under arrest.

In June 2009, the government filed a criminal information against Martin regarding his new mortgage fraud schemes. The information charged Martin with one count of conspiracy to commit mortgage fraud, in violation of 18 U.S.C. § 1956(h). Martin entered into a plea agreement under which he agreed to plead guilty to the conspiracy charge. In a detailed factual proffer, Martin acknowledged that he had engaged in various schemes to defraud financial institutions of slightly more than $5 million. He also agreed to pay restitution to 27 different victims.

In exchange for Martin's plea, the government promised to make a series of favorable sentencing recommendations. First, the government stated that it would recommend concurrent sentences for the conspiracy charge and the supervised

3

release violation. Second, the government agreed to a three-level reduction for acceptance of responsibility. Third, the government pledged not to oppose a sentence at the low end of the guideline range determined by the district court. All three of these recommendations were conditioned on there being "no adverse information . . . suggesting such a recommendation to be unwarranted." The government additionally promised to inform the district court of the nature and extent of Martin's cooperation, and to request a sentence within Martin's guideline range.

In July 2009, Martin appeared before a magistrate judge for a combined change of plea hearing and supervised release revocation hearing. Martin stated that he had received an adequate opportunity to confer with his attorney, Assistant Federal Defender Stephen J. Langs, and he expressed complete satisfaction with Langs's representation. The magistrate reviewed the terms of the plea agreement with Martin. The magistrate observed that the sentencing recommendations in the plea agreement were not binding on the district court. The magistrate explained that Martin faced a sentence of up to 20 years' imprisonment for the conspiracy charge, and a sentence of up to 3 years' imprisonment for the violation of supervised release, and pointed out that the district court could run the two sentences consecutively rather than concurrently. Martin indicated that he

4

understood. The magistrate also advised Martin that any information that his attorney had given him regarding his guideline range was nothing more than an "educated guess." Martin responded, "That's correct." Martin pled guilty to the criminal information, and he also admitted to violating the terms of his supervised release. After receiving the magistrate's report, the district court accepted Martin's plea.

Shortly before the sentencing hearing, Martin moved to withdraw his guilty plea. He argued that his plea was not knowing and voluntary because his attorney, Langs, had misled him about his potential sentencing exposure, the lack of a substantial assistance motion, and the relevant conduct for which he would be held accountable. Martin explained that his draft presentence investigation report ("PSI") had calculated a guideline range of 151 to188 months' imprisonment. In addition, the probation officer had explained that there might be additional enhancements in the final PSI that would increase his range to 235 to 293 months' imprisonment  It is not clear from the record what exactly Langs told Martin about his potential sentence, but at one hearing, Langs stated that he expected Martin's guideline range to be around five years' imprisonment.

The district court denied Martin's motion to withdraw his guilty plea. The district court rejected Martin's argument that he had not received close assistance

of counsel because Martin had stated under oath at the plea hearing that he had discussed his case with Langs and was fully satisfied with Langs's representation. The district court also concluded that Martin's plea was knowing and voluntary. The court observed that the magistrate had extensively questioned Martin regarding his sentence and that Martin had acknowledged that his sentence could be greater or less than what was predicted by counsel. The district court pointed out that a trial "would consume considerable judicial resources, as would a potential new indictment with additional charges." Finally, the district court noted that the government would be prejudiced if Martin were to withdraw his plea because the government had already asked the State of Florida to dismiss charges against Martin.

The final version of Martin's PSI calculated a total offense level of 41 and a criminal history category of III with respect to his conviction for conspiracy to commit money laundering. Those calculations normally would produce a guideline range of 360 months to life, but because Martin's offense carried a statutory maximum of 20 years' imprisonment, his guideline range became 240 months. Martin submitted a series of objections to the PSI. Among other things, he challenged the PSI's calculation of loss, and a sentencing enhancement for 10 or more victims.

At the sentencing hearing, the district court overruled all of Martin's objections to the PSI. The district court found that Martin's objections to the calculation of loss and the number of victims were foreclosed by his factual admissions in the plea agreement. The district court adopted the PSI's guideline calculations.

After the government presented testimony from two victims of Martin's offense, Martin personally addressed the district court. Martin stated that he had "accept[ed] the criminal charges," but he went on to argue that he had been "railroaded into the plea agreement" and that he was "not being disclosed for a nexus of liability of the statutes."

The government urged the district court to impose the statutory maximum sentence with respect to Martin's conviction for conspiracy to commit money laundering. The government also asked the district court to impose the statutory maximum sentence for the supervised release violations, and to run that sentence consecutively to Martin's sentence for the money laundering charge

The district court sentenced Martin to 240 months' imprisonment for the money laundering charge. With respect to the supervised release violations, the district court varied upward from the advisory guideline range of 4 to 10 months' imprisonment and sentenced Martin to a term of 24 months' imprisonment, to run

consecutively to his sentence for the money laundering charge.

II.

In the proceedings below, Martin did not argue that the government had breached his plea agreement. Therefore, we are reviewing for plain error. *Puckett v. United States*, 556 U.S. 129, ___, 129 S.Ct. 1423, 1428, 173 L.Ed.2d 266 (2009). Under the plain error standard, a defendant must establish (1) error, (2), that is plain, and (3) that affects his substantial rights. *Id.* at ___, 129 S.Ct. at 1429. An error affects a defendant's substantial rights if there is a reasonable probability that it altered the outcome of the case. *United States v. Rodriguez*, 398 F.3d 1291, 1299 (11th Cir. 2005). If the first three prongs of plain error review are met, we have discretion to correct an error that "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Puckett*, 556 U.S. at ___, 129 S.Ct. at 1429 (quotation and alteration omitted).

The government must carry out any material promises that it makes as part of a plea agreement. *Santobello v. New York*, 404 U.S. 257, 262, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). We use "objective standards to determine the disputed terms of a plea agreement." *In re Arnett*, 804 F.2d 1200, 1202 (11th Cir. 1986). We "must decide whether the government's actions are inconsistent with what the defendant reasonably understood when he entered his guilty plea." *Id.* at

8

1202-03.

A defendant is entitled to a reduction in his base offense level if he "clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). "As denoted by its plain language, the reduction is intended to reward defendants who express contrition for their wrongdoing and evidence a desire to reform their conduct." *United States v. Williams*, 627 F.3d 839, 844 (11th Cir. 2010). A district court may deny a reduction if the defendant engages in conduct inconsistent with acceptance of responsibility, even if that conduct involves the assertion of a constitutional right. *United States v. Smith*, 127 F.3d 987, 989 (11th Cir. 1997) (*en banc*). "In addition, frivolous legal challenges could suggest . . . that the defendant has not accepted responsibility for his conduct." *Id.*

In this case, the government agreed to recommend a three-level reduction for acceptance of responsibility, but that recommendation was conditioned on there not being any "adverse information . . . suggesting such a recommendation to be unwarranted." The government could reasonably have concluded that Martin had not truly accepted responsibility for his offense, as he moved to withdraw his guilty plea, offered sentencing objections that plainly were foreclosed by his plea agreement, and, during allocution, made frivolous arguments as to why he could not be held responsible for his offense. *See Williams*, 627 F.3d at 844 (explaining

that a defendant accepts responsibility by "express[ing] contrition for their wrongdoing and evidenc[ing] a desire to reform [his] conduct.").

The government's promise to recommend concurrent sentences also was conditioned on the absence of any adverse information suggesting that such a recommendation was inappropriate. The plea agreement does not indicate what sort of adverse information would make concurrent sentences inappropriate, but the government could reasonably have taken the position that Martin's failure to accept responsibility excused its obligation to recommend concurrent sentences. It was not a "plain" breach of the plea agreement for the government to recommend consecutive rather than concurrent sentences.

Martin contends that the government breached its obligation to recommend a within-guideline sentence by arguing for an upward variance with respect to his violation of supervised release, but it is not clear that the plea agreement covers the supervised release violation. The written agreement addresses the conspiracy charge and the possible sentences for that offense, but the only reference in the entire document to the violation of supervised release is in the paragraph providing for concurrent sentences for those two cases. Therefore, it is not "plain" that the government breached the plea agreement by recommending an above-guideline sentence for Martin's violations of supervised release.

10

Next, even assuming that the government breached the plea agreement by failing to advise the district court of the nature and extent of Martin's cooperation, Martin has not shown that the breach affected his substantial rights. The only cooperation that Martin has identified on appeal is his initial pre-plea cooperation that led to the criminal information and the plea agreement. The district court was aware of that cooperation because the plea agreement and factual proffer were made a part of the record for the district court's review. Therefore, the government's failure to mention Martin's pre-plea cooperation likely had no impact on his sentence.

Finally, it was not a violation of the plea agreement for the government to present testimony from victims of Martin's mortgage fraud schemes because the agreement permitted the government to present any factual information relevant to Martin's sentences. *See United States v. Horsfall*, 552 F.3d 1275, 1282-83 (11th Cir. 2008) (holding that the government did not violate defendant's plea agreement by presenting victim impact testimony because the government had specifically reserved the right to inform the district court of all facts relevant to the sentencing process). Martin has not established that the district court plainly erred by failing to determine, *sua sponte*, that the government breached the plea agreement.

III.

Because Martin did not raise a claim of vindictiveness below, we are reviewing for plain error. *See United States v. Naranjo*, 634 F.3d 1198, 1206-07 (11th Cir. 2011) (explaining that arguments raised for the first time on appeal are reviewed for plain error). An error is plain if it is "clear under current law." *United States v. Chau*, 426 F.3d 1318, 1322 (11th Cir. 2005) (quotation omitted). If neither this Court nor the Supreme Court has resolved an issue, there cannot be plain error with respect to that issue. *Id.*

The Due Process Clause prohibits the government from retaliating against a defendant for exercising his legal rights. *United States v. Jones*, 601 F.3d 1247, 1260 (11th Cir. 2010). In addition, a district court may not vindictively increase a defendant's sentence to punish the defendant for previously filing a successful appeal. *Alabama v. Smith*, 490 U.S. 794, 798, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865 (1989).

In this case, the probation officer told defense counsel about the additional enhancements even before Martin moved to withdraw his plea. Thus, those new enhancements could not have been imposed in retaliation for the motion to withdraw. Martin suggests that his defense counsel may have orally advised the probation officer of his intent to withdraw his plea before the probation officer

mentioned the new sentencing enhancements, but he does not point to anything in the record that supports that contention. Therefore, Martin has not met his burden of demonstrating error with respect to this issue. In any event, Martin cannot satisfy the "plain" prong because neither this Court nor the Supreme Court has extended the due process concept of vindictiveness to sentencing recommendations made by a probation officer. *See Chau*, 426 F.3d at 1322. Accordingly, Martin is not entitled to relief with respect to this issue.

IV.

We review a district court's denial of a motion to withdraw a guilty plea for an abuse of discretion. *United States v. Najjar*, 283 F.3d 1306, 1307 (11th Cir. 2002). A defendant may withdraw a plea of guilty prior to sentencing if he "can show a fair and just reason for requesting the withdrawal." Fed.R.Crim.P. 11(d)(2)(B). "In determining whether a defendant has shown a fair and just reason, the district court evaluates the totality of the circumstances, including '(1) whether close assistance of counsel was available; (2) whether the plea was knowing and voluntary; (3) whether judicial resources would be conserved; and (4) whether the government would be prejudiced if the defendant were allowed to withdraw his plea.'" *Najjar,* 283 F.3d at 1309 (quoting *United States v. Buckles*, 843 F.2d 469, 472 (11th Cir. 1988)). There is a strong presumption that

13

statements made under oath during a plea colloquy are truthful. *United States v. Medlock*, 12 F.3d 185, 187 (11th Cir. 1994).

In this case, the record reflects that Martin received the close assistance of counsel. At the change of plea hearing, Martin stated under oath that he had adequately discussed his case with his attorney, Langs, and he expressed satisfaction with Langs's representation. Although Martin made contrary assertions in his motion to withdraw his plea, his statements at the plea hearing are entitled to a strong presumption of truthfulness. *See Medlock*, 12 F.3d at 187. This first factor weighs against permitting Martin to withdraw his plea.

In addition, the record shows that Martin's plea was knowing and voluntary. Even if Langs gave Martin erroneous advice about his sentence, the magistrate specifically informed Martin during the plea colloquy that his attorney's sentencing predictions were nothing more than an "educated guess" and that the district court had discretion to impose a total sentence of up to 23 years' imprisonment. *See United States v. Pease*, 240 F.3d 938, 940–41 (11th Cir. 2001) (although defense counsel incorrectly calculated defendant's sentence, the defendant was not entitled to withdraw his plea because he had been advised during the plea colloquy that he could not rely on counsel's predictions, and that the district court could impose a sentence of up to life imprisonment).

With respect to the third factor, allowing Martin to withdraw his plea would not conserve judicial resources because the government would have to obtain an indictment, possibly with new charges, and the district court would have to conduct a full trial. Finally, the government would be prejudiced if Martin were to withdraw his plea because the government apparently convinced the State of Florida to drop charges against Martin after he entered into the plea agreement. In light of all the relevant factors, the district court did not abuse its discretion by denying Martin's motion to withdraw his plea.

Accordingly, we affirm Martin's conviction for conspiracy to commit money laundering, and the revocation of his term of supervised release.

**AFFIRMED.**