[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-14043
Non-Argument Calendar

_____

D.C. Docket No. 2:10-cr-00115-JES-SPC-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EVA CRUZ,
ROBERTO CRUZ,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(January 29, 2013)

Before MARTIN, JORDAN and ANDERSON, Circuit Judges.

PER CURIAM:

Roberto Cruz and Eva Cruz appeal their convictions, and Roberto Cruz appeals his sentence, for conspiracy to knowingly possess with intent to transfer unlawfully five or more false identification documents and possess a document-making implement with the intent that it be used in the production of a false identification document, in violation of 18 U.S.C. § 1028(a)(3), (a)(5), and (f). Roberto Cruz argues on appeal that there was insufficient evidence at trial, and that the district court therefore erred in denying his Rule 29 motion for acquittal. Together, the Cruzes argue that the court was required to enter a judgment of acquittal after it redacted the word "transfer" from the indictment's language charging a conspiracy to "produce, transfer, and possess" a document-making implement.[1]

The Cruzes also argue that the court made five categories of erroneous evidentiary rulings, each requiring reversal. First, they assert that the district court

---

[1] Pursuant to Federal Rule of Appellate Procedure 28(i) and Circuit Rule 28-1(f), both Roberto and Eva Cruz included statements in their briefs adopting arguments made by the other: Roberto purported to adopt "any issues applicable to [him]" that were made in Eva's brief and Eva purported to adopt all of Roberto's arguments except those that related to sentencing. We accept some of these adoptions and reject others. Specifically, because "evidence against the two substantially differed," Eva Cruz may not adopt Roberto Cruz's sufficiency of the evidence argument. United States v. Khoury, 901 F.2d 948, 963 n.13 (11th Cir. 1990) (noting that "[a]lthough [the defendant] did adopt the arguments of his co-appellants, the fact-specific nature of an insufficiency claim requires independent briefing if we are to reach the merits."). We will assume that Eva Cruz may adopt Roberto Cruz's argument about the language of the indictment (which charged them jointly) and arguments about evidence admitted at their joint trial. We will also assume that Roberto Cruz may adopt the destruction of evidence argument made by Eva Cruz.

2

admitted inadmissible and irrelevant evidence and testimony against them. Second, they argue that the court admitted inadmissable hearsay evidence in violation of their rights under the Sixth Amendment's Confrontation Clause. Third, the Cruzes challenge the court's decision to allow—over "Jenks [sic] and Hearsay objections"—testimony regarding a comparison between the serial numbers of money seized during a search of the Cruzes' residence and a receipt listing the serial numbers of undercover "buy money." Fourth, they argue that the court erred by permitting a witness to "sa[y] something about <u>Miranda</u>" even though Roberto Cruz had opted to remain silent. Fifth, the Cruzes argue that the court's erroneous evidentiary rulings necessitate a new trial under the cumulative error doctrine.

The Cruzes also argue, for the first time on appeal, that the government's destruction of an audio recording, containing Eva Cruz's potentially exculpatory remarks, violated their due process rights.

In addition to these challenges to his conviction, Roberto Cruz makes several arguments related to his sentence. Specifically, he argues that the court erred by denying his request for a reduction of his offense level under the sentencing guidelines for acceptance of responsibility. He also argues that the court erred by overruling his objection to the application of an aggravating role

3

enhancement under Section 3B1.1(c) of the United States Sentencing Guidelines. Roberto Cruz further argues that his sentence was procedurally and substantively unreasonable.

## I.

Roberto Cruz argues that the court erred by denying his Rule 29 motion based on a lack of sufficient evidence. "We review de novo the denial of a motion for acquittal and the sufficiency of the evidence to sustain a conviction." United States v. Tampas, 493 F.3d 1291, 1297 (11th Cir. 2007). We "view[] the evidence in the light most favorable to the government and draw[] all reasonable inferences and credibility choices in favor of the jury's verdict." Id. at 1297–98 (quotation marks omitted). Where, as in this case, the jury convicted the defendant, we will affirm the conviction "if a reasonable juror could have concluded that the evidence established [the defendant's] guilt beyond a reasonable doubt." Id. at 1298.

Roberto Cruz was charged with conspiracy to violate 18 U.S.C. § 1028(a)(3) and (a)(5). To convict a defendant of conspiracy, the government must prove, beyond a reasonable doubt, "(1) that a conspiracy existed; (2) that [the defendant] knew about the conspiracy; and (3) that [he] knowingly joined the conspiracy." United States v. Garcia-Bercovich, 582 F.3d 1234, 1237 (11th Cir. 2009). The underlying offense, § 1028 (a)(3), makes it illegal to "knowingly

4

possess[] with intent to use unlawfully or transfer unlawfully five or more identification documents . . . authentication features, or false identification documents." 18 U.S.C. § 1028(a)(3).  Section 1028(a)(5) makes it illegal to "knowingly produce[], transfer[], or possess[] a document-making implement or authentication feature with the intent such document-making implement or authentication feature will be used in the production of a false identification document." Id. § 1028(a)(5).

The government's evidence at trial was sufficient for a reasonable juror to find that the Cruzes and Alex Cruz Juarez[2] had knowingly agreed to possess, with intent to transfer, five or more false identification documents and to possess a document-making instrument with intent to use it to make false documents.  The government presented evidence that showed that Roberto Cruz knew of and participated in the conspiracy.  For example, Alex Cruz Juarez testified that Roberto Cruz instructed him to use the computer to make identification cards and that Roberto Cruz set the prices for those cards.  Undercover Officer Samuel Gonzalez testified about the role Roberto Cruz played when Officer Gonzalez and a confidential informant purchased false identification cards.  There was also

---

[2] Alex Cruz Juarez is Roberto Cruz's brother.  He pleaded guilty and testified against the Cruzes at trial.

5

evidence that the aim of the conspiracy was to produce five or more identification cards because the conspirators sold more than that amount to Officer Gonzalez.

In addition, the government did not have to prove that the defendants accomplished the purpose of the conspiracy. See United States v. Campa, 529 F.3d 980, 1002 (11th Cir. 2008). There must only be evidence of an overt act, which may be innocent in nature, that furthered the purpose of the conspiracy. Id. at 1002. The jury could have reasonably found that this requirement was satisfied by evidence of Roberto Cruz's role in the sales of false documents to a woman who testified at trial and to a confidential informant whose interactions with Roberto Cruz were recorded by the police.

Further, contrary to Roberto Cruz's argument, the government did not have to prove that the conspiracy was to perform acts that were "in or affect[ing] interstate . . . commerce." 18 U.S.C. § 1028(c). To convict a defendant under § 1028(a), the circumstance involved must be one of those listed in § 1028(c). See id. § 1028(a). One such circumstance is that the conspiracy was "in or affect[ing] interstate . . . commerce." Id. § 1028(c). However, other circumstances permit prosecution under § 1028(c). For example, prosecution is permitted if the "false identification document[s]" involved in the case "appear[] to be issued by or under the authority of the United States." Id. § 1028(c)(1). Prosecution is also permitted

6

if the "document-making implement" was intended to create documents that "appear[] to be issued by or under the authority of the United States." Id. § 1028(c)(1). The documents Roberto Cruz was charged and convicted of possessing were false permanent resident cards and social security cards. The document-making implement Roberto Cruz was charged and convicted of possessing was set up to make false permanent resident cards and social security cards. False permanent resident cards and social security cards clearly "appear[] to be issued by or under the authority of the United States" and thus, the government sufficiently demonstrated that the circumstances of this case satisfied § 1028(c). See id. § 1028(c)(1).

Therefore, there was sufficient evidence for a reasonable juror to convict Roberto Cruz and the district court's denial of the Rule 29 motion was proper.

II.

Together the Cruzes argue that the district court erred in denying their Rule 29 motion based on problems with the indictment. "A district court's determination regarding sufficiency of the indictment is a question of law subject to de novo review." United States v. Ndiaye, 434 F.3d 1270, 1280 (11th Cir. 2006). A court may redact an indictment "so long as the elements of the offense charged are fully and clearly set out in what remains." United States v. Adkinson,

7

135 F.3d 1363, 1376 (11th Cir. 1998).

The Cruzes argue that because the indictment charged them with conspiracy to "knowingly produce, transfer, and possess a document[-]making implement" in violation of § 1028(a)(5), the court should have entered a directed verdict when it determined that the government did not prove that the conspiracy involved transferring the implement.  (emphasis added).  However, § 1028(a)(5) makes it a violation to either "produce[], transfer[], or possess[] a document-making implement."  18 U.S.C. § 1028(a)(5) (emphasis added).  And, "the law is well established that where an indictment charges in the conjunctive several means of violating a statute, a conviction may be obtained on proof of only one of the means."  United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000).  Therefore, as long as the government offered evidence that the Cruzes were producing or possessing a document-making implement, the fact that it did not show that the Cruzes were transferring such an implement is not grounds for an acquittal on the whole charge.  Similarly, it was not improper for the district court to redact the word "transfer" from the indictment because the remaining language still fully and clearly set out the charged offense.

### III.

The Cruzes next make a series of arguments regarding evidentiary rulings

8

made by the district court.  We review questions of constitutional law, such as whether there was a Confrontation Clause violation, de novo and determinations of the admissibility of evidence for abuse of discretion.  United States v. Underwood, 446 F.3d 1340, 1345 (11th Cir. 2006).  An erroneous evidentiary ruling does not require reversal if the resulting error was harmless.  United States v. Turner, 474 F.3d 1265, 1275 (11th Cir. 2007).

## A.

The Cruzes' first evidentiary argument is that the "[d]istrict [c]ourt [e]rred in [a]dmitting [i]nadmissible and [i]rrelevant [e]vidence and [t]estimony," specifically (1) pictures of computer equipment found in the Cruzes' attic during a search, (2) pictures of identification cards found during the search, (3) identification cards a confidential informant gave to Detective Michael Milano, and (4) testimony by Officer Gonzalez about the identity of Roberto Cruz's voice on audio recordings.

"The district court possesses broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue."  United States v. Terzado-Madruga, 897 F.2d 1099, 1117 (11th Cir. 1990).  Under Rule 403 of the Federal Rules of Evidence, evidence should be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice."  United States v. Wright, 392 F.3d

9

1269, 1276 (11th Cir. 2004) (quotation marks omitted).  The balancing test under Rule 403 favors admissibility.  Id.

The photographs of the computer equipment and identification cards found during the search were highly probative.  Evidence of the computer equipment in the Cruzes' residence was relevant to prove that there was a conspiracy to possess a document-making implement with intent to use it to produce false documents.  See 18 U.S.C. § 1028(a)(5).  Evidence of the identification cards was relevant to prove that there was a conspiracy to possess with intent to transfer false identification documents.  See id. § 1028(a)(3).  The district court did not abuse its discretion in determining that the highly probative nature of this evidence outweighed any risk "of jury confusion, prejudice, or needless presentation of cumulative evidence."  United States v. Sanchez, 992 F.2d 1143, 1160 (11th Cir. 1993).

Nor did the district court abuse its discretion by allowing the government to introduce identification cards that a confidential informant gave to Detective Milano.  The Cruzes argue that this evidence was inadmissible due to a lack of foundation.  It was not an abuse of discretion for the court to determine that Detective Milano's testimony that he had received the identification cards from the confidential informant during an undercover transaction at the Cruzes'

10

residence provided a sufficient foundation.  Any challenge to the chain of custody of those identification cards, "goes to the weight rather than the admissibility of the evidence."  United States v. Lopez, 758 F.2d 1517, 1521 (11th Cir. 1985).

The Cruzes also argue that the Court erred in admitting Gonzalez's testimony as to the identity of Roberto Cruz's voice on audio tape recordings.  The Cruzes argue that this was an error because "no evidence was introduced showing Gonzalez to be an expert" in voice identification.  The district court did not abuse its discretion in admitting this evidence, however, because the identifying witness does not need to be an expert witness.  See Fed. R. Evid. 901 advisory committee's note, example 5 (noting that "aural voice identification is not a subject of expert testimony").  "Once a witness establishes familiarity with an identified voice, it is up to the jury to determine the weight to place on the witness's voice identification."  Brown v. City of Hialeah, 30 F.3d 1433, 1437 (11th Cir. 1994).  Officer Gonzalez established his familiarity with Roberto Cruz's voice, so his testimony was admissible.

## B.

The Cruzes' second evidentiary argument is that the district court erred by admitting "[p]rejudicial [h]earsay [e]vidence [that] [v]iolated the Confrontation Clause."  Specifically, the Cruzes challenge the district court's admission of (1)

11

taped conversations between a confidential informant and Roberto Cruz, (2) taped conversations between the police and Eva Cruz, (3) statements made by Eva Cruz outside of court that were included in the testimony of Deputy Bryan Perera, (4) identification cards given to the police by the confidential informant, and (5) the testimony of Agent Tara Maguire regarding her comparison of evidence to a records database.

"Hearsay" is a statement, other than one made by the declarant while testifying at the current trial or hearing, that is offered into evidence to prove the truth of the matter asserted. Fed. R. Evid. 801(c). In Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004), the Supreme Court held that, under the Confrontation Clause, testimonial hearsay is inadmissible unless the declarant is unavailable and the defendant had a prior opportunity for cross-examination. Id. at 68, 124 S. Ct. at 1374. A testimonial statement is "typically a solemn declaration or affirmation made for the purpose of establishing or proving some fact." Id. at 51–52, 124 S. Ct. at 1364.

The district court did not abuse its discretion by admitting this evidence. First, the statements made by Roberto Cruz in his taped conversations with the confidential informant, the statements made by Eva Cruz in her taped conversations with the police, and the statements made by Eva Cruz that were part

of Deputy Perera's testimony were not hearsay.  Under the Federal Rules of Evidence, a statement made by an opposing party, offered against that party, is not hearsay.  Fed. R. Evid. 801(d)(2)(A).  In addition, a statement "made by the party's co-conspirator during and in furtherance of the conspiracy" is not hearsay.  Id. at 801(d)(2)(E).  There was enough evidence for the district court to conclude, by a preponderance of the evidence, that there was a conspiracy involving Roberto and Eva Cruz and that the statements made by Roberto and Eva Cruz were made during the course of, and in furtherance of, the conspiracy.  See Bourjaily v. United States, 483 U.S. 171, 175, 107 S. Ct. 2775, 2778 (1987) (explaining the preliminary facts necessary to treat a statement as nonhearsay under Fed. R. Evid. 801(d)(2)(e) and stating that these facts must be "established by a preponderance of proof").  Therefore, the statements made by Roberto Cruz and Eva Cruz were not hearsay.  Further, neither Roberto nor Eva Cruz "directly inculpate[d]" the other in any of the statements that counsel objected to, thus, there is no Confrontation Clause violation under Bruton v. United States, 391 U.S. 123, 135–36, 88 S. Ct. 1620, 1627-28 (1968).  See United States v. Beale, 921 F.2d 1412, 1425 (11th Cir. 1991).

Second, the statements made by the confidential informant during the taped conversations with Roberto Cruz were not offered for the truth of the matter

13

asserted, but were instead offered to provide a context for Roberto Cruz's statements. Therefore, these statements were not hearsay and their admission did not violate the Confrontation Clause. See Fed. R. Evid. 801(c).

Third, the Cruzes' argument regarding the admission of the identification cards is essentially a lack of foundation or chain of custody argument, not a hearsay or Confrontation Clause argument. The Cruzes objected to this evidence on the grounds that the confidential informant, who had given the cards to the detectives, was not in court and had not been previously available for cross-examination. However, the Cruzes do not point to any statement made by the informant, offered for the truth of the matter asserted, that could be considered hearsay or testimonial. We considered, and rejected, the foundational and chain of custody arguments related to this evidence in Section III.A.

Fourth, Agent Maguire's testimony comparing identification cards in evidence to the Bureau of Customs and Immigration Enforcement's Central Index System was not hearsay. The only statements at issue were those made by Agent Maguire regarding her personal comparisons of the identification cards and the database. Those statements were made in court and are therefore not hearsay. See Fed. R. Evid. 801(c). Though Agent Maguire spoke generally about the types of information stored in the database to lay a foundation for her testimony, she did

14

not testify about specific information that is in the database.  In addition, insofar as Agent Maguire testified that certain information was not in the database at all, that testimony fit into an exception to the hearsay rule, Fed. R. Evid. 803(7).

Therefore, the district court did not abuse its discretion by admitting this evidence.

## C.

The Cruzes' third evidentiary argument is that the district court erred in allowing the testimony of Sergeant Jermiah Marcotte over their hearsay and Jencks Act objections.  We review a district court's Jencks Act findings for clear error.  United States v. Delgado, 56 F.3d 1357, 1363 (11th Cir. 1995).  We review a district court's enforcement of Jencks Act disclosure requirements for abuse of discretion.  See United States v. Valera, 845 F.2d 923, 927 (11th Cir. 1988).

Sergeant Marcotte's testimony was not hearsay.  Sergeant Marcotte testified about observations he made when comparing the serial numbers of the money found in the Cruzes' house to a receipt listing the serial numbers of the money used during the undercover operation.  He stated these observations in court, and thus those statements were not hearsay.  See Fed. R. Evid. 801(c).  To the extent that the Cruzes are instead questioning whether a sufficient foundation was laid for the comparison or whether the reciept was reliable, the court did not abuse its

15

discretion in finding that the government had laid a sufficient foundation and any questions of reliability were for the jury to resolve. In addition, the receipt was later introduced into evidence without objection.

The Cruzes also suggest that there was a Jencks Act violation because the government did not produce the receipt listing the serial numbers of the "buy money" that was referenced during Sergeant Marcotte's testimony. However, the Jencks Act only requires that the government "produce any statement . . . of the witness," and Sergeant Marcotte did not author the receipt. 18 U.S.C. § 3500(b) (emphasis added); see also id. § 3500(e). Furthermore, the government did ultimately produce the receipt. Therefore, there was no Jencks Act violation.

## D.

The Cruzes also argue that the court erred by allowing Deputy Perera to "sa[y] something about Miranda" during his testimony.[3] The Cruzes seem to be arguing that, based upon Deputy Perera's discussion of Miranda in the context of Eva Cruz, the "jury may [have] somehow inferr[ed] that [Roberto Cruz] had invoked his right to remain silent." Use of a defendant's silence after being Mirandized to impeach his defense at trial violates the defendant's due process

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966).

16

rights.  Doyle v. Ohio, 426 U.S. 610, 619, 96 S. Ct. 2240, 2245 (1976).  But Deputy Perera's only discussion of Miranda was about Eva Cruz, who waived her Miranda rights and spoke to the police.  Deputy Perera did not mention that Roberto Cruz had been Mirandized or that he had chosen to remain silent.  The government did not violate Roberto Cruz's rights just because there was a chance that the jury could have, through no fault of the government, inferred that Roberto Cruz had also been Mirandized and had chosen to invoke his right to remain silent.

### E.

The Cruzes' final evidentiary argument is that all of the evidentiary issues discussed above constitute cumulative error necessitating a mistrial.  Under the cumulative error doctrine, we review the record as a whole to determine whether the defendant was afforded a fundamentally fair trial.  United States v. Lopez, 590 F.3d 1238, 1258 (11th Cir. 2009), cert. denied, 131 S. Ct. 413 (2010).  To find cumulative error, there must have been at least one error, see United States v. Waldon, 363 F.3d 1103, 1108–09 (11th Cir. 2004), and the cumulative effect of the errors must have been prejudicial, United States v. Baker, 432 F.3d 1189, 1203 (11th Cir. 2005).  As we have discussed, the Cruzes have not shown any evidentiary error that would support a mistrial under the cumulative error doctrine.

### IV.

17

The Cruzes also argue that their due process rights were violated by the destruction of a recording that included possible exculpatory evidence, specifically a statement by Eva Cruz that identification documents were not made at the Cruzes' residence.  Because the Cruzes never asked the district court for relief on these grounds, we review for plain error.  United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005).  The requirements for plain error are (1) an error occurred; (2) the error was plain; (3) the error affected substantial rights; and (4) not correcting the error would seriously affect the fairness of the judicial proceeding.  Id.

"The loss of evidence by the government is a denial of due process only when the defendant shows that the evidence was likely to significantly contribute to his defense."  United States v. Lanzon, 639 F.3d 1293, 1300 (11th Cir. 2011) (quotation marks omitted).  The exculpatory value of the evidence must have been apparent before it was destroyed and the evidence must "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."  United States v. Revolorio-Ramo, 468 F.3d 771, 774 (11th Cir. 2006) (quotation marks omitted).  To establish a due process violation based upon destruction of evidence, the defendant must also show bad faith on the part of the police.  Id.  Bad faith is present if the officer destroyed the evidence "in a

18

calculated effort to circumvent the disclosure requirements established by Brady v. Maryland." See California v. Trombetta, 467 U.S. 479, 488, 104 S. Ct. 2528, 2533 (1984).

The destruction of the tape did not amount to a due process violation. First, comparable evidence was offered to the court. Officer Gonzalez testified that on his first undercover attempt to purchase documents from the Cruzes, which was the subject of the destroyed recording, Eva Cruz stated "we don't make IDs here." Officer Gonzalez was available for questioning about further details of that first conversation and the Cruzes do not allege that any other parts of that conversation would have been helpful to her defense. Second, the Cruzes have not shown that the tape was destroyed in bad faith. Officer Gonzalez explained that the tape was "never considered . . . evidence" because it "was not [of] a transaction that occurred" and therefore it was not subject to the "destruction of evidence process."

## V.

Finally, Roberto Cruz challenges his sentence. He argues that the court erred in its calculation of his offense level under the sentencing guidelines by not giving him a reduction for accepting responsibility and for giving him an enhancement for the role he played in the offense. The district court's factual determinations of whether a defendant accepted responsibility for his crimes and what the

19

defendant's role in the offense was are reviewed for clear error.  United States v. Williams, 627 F.3d 839, 844 (11th Cir. 2010); United States v. Alred, 144 F.3d 1405, 1421 (11th Cir. 1998).  The district court's "application of the Guidelines to those facts is reviewed de novo."  United States v. Mandhai, 375 F.3d 1243, 1247 (11th Cir. 2004).  Roberto Cruz also challenges the reasonableness of his sentence, which is reviewed under the abuse of discretion standard.  Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007).

## A.

Roberto Cruz challenges the district court's denial of his request for a reduction of his offense level under the sentencing guidelines for acceptance of responsibility.  Section 3E1.1(a) of the sentencing guidelines allows for a two-level reduction "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense."  U.S.S.G. § 3E1.1(a).

Contrary to Roberto Cruz's argument, he was not denied the reduction based on the fact that he went to trial.  The district court acknowledged that the reduction may be available in instances where a defendant went to trial.  However, here, the court did not find any "indication" that Cruz "accepted responsibility at any point in this case."  The district court did not clearly err in reaching this conclusion.

## B

20

Roberto Cruz argues that the district court erred in applying a two-level enhancement to his offense level based on the role he played in the conspiracy. Section 3B1.1(c) of the sentencing guidelines imposes a two-level enhancement when "the defendant was an organizer, leader, manager, or supervisor in [] criminal activity." U.S.S.G. § 3B1.1(c). The government must prove the factual basis for the enhancement by a preponderance of the evidence. United States v. Polar, 369 F.3d 1248, 1255 (11th Cir. 2004).

The district court did not clearly err in its determination that Alex Cruz Juarez's sworn testimony[4] and other evidence presented in the case demonstrated, by a preponderance of the evidence, that Roberto Cruz was either an organizer, leader, manager, or supervisor of the conspiracy. For example, Juarez testified that Roberto Cruz instructed Juarez to make the documents and that Roberto Cruz set the prices the documents were to be sold for. Applying the guidelines to these facts, it was appropriate for the district court to apply a two-level enhancement.

### C.

---

[4] Roberto Cruz challenges the court's reliance on Juarez's testimony because Juarez "entered into a plea agreement and therefore had an ulterior motive to 'point the finger' at his brother." Cruz's argument also relies on his assertion that Juarez recanted his testimony after the conclusion of Cruz's sentencing hearing. Both of these arguments are directed at Juarez's credibility. The court determined that Juarez's testimony was credible and "we allot substantial deference to the factfinder . . . in reaching credibility determinations with respect to witness testimony." EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1285 (11th Cir. 2000).

21

Additionally, Roberto Cruz argues that his sentence was unreasonable.  In reviewing the reasonableness of a sentence, we "must first ensure that the district court committed no significant procedural error."  Gall, 552 U.S. at 51, 128 S. Ct. at 597.  Once we determine that a sentence is procedurally sound, we examine whether the sentence is substantively reasonable in light of the totality of the circumstances.  Id.  The party challenging the sentence bears the burden of establishing unreasonableness.  United States v. Tome, 611 F.3d 1371, 1378 (11th Cir. 2010).

The district court did not commit any significant procedural error in calculating Cruz's sentence.  Neither did the court levy a substantively unreasonable sentence.  The district court considered all of the § 3553 factors and specifically discussed many of those factors, including Cruz's history and characteristics, the sentencing range established for this type of offense, and the need to avoid unwarranted sentence disparities.  See 18 U.S.C. § 3553.  In addition, there is no indication that the district court clearly erred in its weighing of the § 3553 factors.  Therefore, the court did not abuse its discretion by sentencing Roberto Cruz to 36 months imprisonment.  See United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (explaining that we vacate a sentence "if, but only if, we are left with the definite and firm conviction that the district court committed a

22

clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case" (quotation marks omitted)).

VI.

For these reasons we affirm the judgments of the district court.

**AFFIRMED**