[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-12303
Non-Argument Calendar
_____

D.C. Docket No. 8:11-cr-00134-EAK-TBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAREEM CUSICK,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(February 24, 2014)

Before MARCUS, PRYOR and MARTIN, Circuit Judges.

PER CURIAM:

Kareem Cusick appeals his conviction for possession of a firearm and ammunition by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), and 924(e).  On appeal, he argues that the district court erred by denying his motion to

suppress evidence obtained when he was stopped by police because the officers did not have reasonable suspicion to justify stopping him, he did not consent to a search of the vehicle he was riding in, and even if he did consent, it was not voluntary.  After careful review, we affirm.

The denial of a defendant's motion to suppress generally involves a mixed question of fact and law.  United States v. Lindsey, 482 F.3d 1285, 1290 (11th Cir. 2007).  We construe findings of fact in the light most favorable to the prevailing party below and review them for clear error, while we review findings of law de novo.  Id.  Under the clear error standard, we will not disturb factual findings unless we are left with a definite and firm conviction that the district court made a mistake.  United States v. Crawford, 407 F.3d 1174, 1177 (11th Cir. 2005).

When reviewing a motion to suppress, we are not restricted to the evidence presented at the suppression hearing, but instead look at the entire record.  United States v. Jordan, 635 F.3d 1181, 1185 (11th Cir. 2011).  Credibility determinations are typically the province of the factfinder because they personally observe the testimony and are in a better position than a reviewing court to assess witnesses.  United States v. Ramirez-Chilel, 289 F.3d 744, 749 (11th Cir. 2002).  A credibility determination should not be disturbed unless it is contrary to the laws of nature, or is so inconsistent or improbable that no reasonable factfinder could accept it.  Id.

2

There are three categories of police-citizen encounters contemplated within the Fourth Amendment: (1) police-citizen exchanges involving no coercion or detention; (2) brief seizures or investigatory detentions; and (3) full-scale arrests. United States v. Hastamorir, 881 F.2d 1551, 1556 (11th Cir. 1989). Interactions falling within the first category -- consensual encounters -- are not subject to Fourth Amendment scrutiny. United States v. Perez, 443 F.3d 772, 777 (11th Cir. 2006). The Supreme Court has stated that "[l]aw enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen," and that "[i]f a reasonable person would feel free to terminate the encounter, then he or she has not been seized." United States v. Drayton, 536 U.S. 194, 200-01 (2002). Factors used to determine whether a reasonable person would feel free to leave include, among other things, "whether a citizen's path is blocked or impeded; whether identification is retained; the suspect's age, education, and intelligence; the length of the suspect's detention and questioning; the number of police officers present; the display of weapons; any physical touching of the suspect; and tone of voice of police." United States v. De La Rosa, 922 F.2d 675, 678 (11th Cir. 1991).

3

Officers may seize a suspect for a brief, investigatory Terry[1] stop where the officers have reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity, and the stop is reasonably related in scope to the circumstances which justified the interference in the first place. United States v. Acosta, 363 F.3d 1141, 1144-45 (11th Cir. 2004). Reasonable suspicion is not "readily, or even usefully, reduced to a neat set of legal rules." United States v. Sokolow, 490 U.S. 1, 7 (1989) (quotation omitted). It is "considerably less proof than proof of wrongdoing by a preponderance of the evidence" and less than probable cause. Id. When determining whether reasonable suspicion justified a detention, courts must review whether the officer had a "particularized and objective basis" for suspecting wrongdoing, based on the totality of the circumstances. United States v. Arvizu, 534 U.S. 266, 273 (2002).

Reasonable suspicion does not have to be based on an officer's personal observations, but may also be based on information supplied by another person, as long as the information bears sufficient indicia of reliability. Adams v. Williams, 407 U.S. 143, 147 (1972). An anonymous tip, sufficiently corroborated, may provide reasonable suspicion that an individual is engaged in criminal activity. Alabama v. White, 496 U.S. 325, 331 (1990). The tip, however, must not merely describe an individual's appearance or location, but must "be reliable in its

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

assertion of illegality, not just in its tendency to identify a determinate person." Florida v. J.L., 529 U.S. 266, 272 (2000).

A search of property without a warrant or probable cause is proper under the Fourth Amendment if the search was subsequent to valid consent. United States v. Harris, 526 F.3d 1334, 1339 (11th Cir. 2008). A third party with mutual use of the property and joint access to or control over the premises sought to be inspected can give valid consent to search an area. Id. Searches conducted by means of consent are valid as long as the consent is voluntary. United States v. Kapperman, 764 F.2d 786, 793 (11th Cir. 1985). Generally, consent is voluntary if it is the product of an essentially free and unconstrained choice. United States v. Garcia, 890 F.2d 355, 360 (11th Cir. 1989). A factual finding concerning consent is based on the totality of the circumstances, taking into account whether the person was in custody, the existence of coercion, the person's awareness of their right to refuse consent, the person's education and intelligence, and whether the person believed incriminating evidence would be found. Johnston v. Tampa Sports Auth., 530 F.3d 1320, 1326 (11th Cir. 2008). The Fourth Amendment does not always require law enforcement to inform detainees they are free to go before consent to search can be deemed voluntary. Ohio v. Robinette, 519 U.S. 33, 39-40 (1996).

A suspect can consent to a search, yet still place limits on the search's scope. United States v. Milian-Rodriguez, 759 F.2d 1558, 1563 (11th Cir. 1985). The

government must conform to the limitations placed on the search for it to be permissible. United States v. Strickland, 902 F.2d 937, 941 (11th Cir. 1990). If consent is given without express limitations, the scope is "constrained by the bounds of reasonableness," meaning "what a police officer could reasonably interpret the consent to encompass." Id. The government has the burden of showing, by a preponderance of the evidence, both that there was consent to search and that the consent was voluntary. United States v. Pineiro, 389 F.3d 1359, 1366 (11th Cir. 2004). Although the preponderance standard is not as difficult to meet as the reasonable doubt or clear and convincing standard, it "is not toothless," and the government must meet its burden with "reliable and specific evidence." United States v. Lawrence, 47 F.3d 1559, 1566 (11th Cir. 1995).

Here, the police's initial encounter with Cusick did not violate his Fourth Amendment rights because there was no seizure at all. We recognize that there were several police officers present, and Cusick testified that an officer asked him for his ID, although it is unclear if he retained it. However, the calculus to determine whether a seizure occurred involves a holistic view of an encounter, and simply asking for or retaining ID alone does not transform a consensual encounter into a brief detention. See De La Rosa, 922 F.2d at 678 n.2 ("[T]emporary retention of the license did not preclude appellant from terminating the encounter."). The record shows that the other factors indicated Cusick was free to

6

leave.  For example, police cruisers did not block Cusick's vehicle so that it was unable to leave the parking lot, and the officers were not threatening in their demeanor.  Therefore, this was a situation in which a reasonable person would have felt free to terminate the encounter.

In any event, even if we were to assume, arguendo, that the encounter amounted to a brief detention, or Terry stop, Cusick's Fourth Amendment rights were still not violated because the stop was justified by reasonable suspicion.  As the record shows, the St. Petersburg police received a tip about a man firing a gun in a club.  Many of the details the tipster gave police about the shooter, including the type of car he was in, its tag number, and his physical description, pointed to Cusick.  Moreover, the tip's reliability was enhanced by audible gunfire heard by officers just before the call came in.  Furthermore, the tipster was not anonymous; she left a name and phone number, and police were able to get back in touch with her after her original call.  Thus, although the officer did not detain Cusick based on his own observations, the third-party observations he relied on had sufficient indicia of reliability to give him reasonable suspicion.

As for consent, a reasonable factfinder could have believed the officers' version of events over the defendant's, and determined that consent was given to search the vehicle.  The record shows that the officers testified consistently about Cusick's giving them voluntary consent to search the vehicle.  Cusick, on the other

hand, admitted to claiming everything in the car, but maintained that he did not do so until after he was handcuffed and placed in a police cruiser.  However, Cusick's other two witnesses failed to provide a consistent narrative.  Given the deference accorded to a factfinder's credibility determination, the district court did not clearly err by crediting the officers' narrative and determining Cusick had consented to a search.  Ramirez-Chilel, 289 F.3d at 749 ("[I]n evaluating the factual version of events between the law enforcement officers and [the defendant], we should defer to the magistrate judge's determinations unless his understanding of the facts appears to be unbelievable.") (quotation omitted).

As for whether the consent was voluntary, we've already accepted the district court's finding that Cusick was not yet in custody when the consent was given.  Further, one of Cusick's witnesses even testified that the police officers were calm and non-threatening when speaking with him and Cusick before the gun was found.  Thus, it was not clearly erroneous for the district court to determine that Cusick's consent had been "the product of an essentially free and unrestrained choice."  Garcia, 890 F.2d at 360.  Nor did the district court clearly err in concluding that the search was performed within the parameters of Cusick's consent.  As the record shows, when Cusick told the officer he could search the car, there were other officers present, and it was reasonable for an officer to interpret the statement as giving the police permission to search in general, not

8

simply giving one officer permission to search.  Therefore, we conclude that the district court did not err in denying Cusick's motion to suppress.

**AFFIRMED.**