**CORRECTED** [PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 8, 2008
THOMAS K. KAHN
CLERK

No. 07-13473
Non-Argument Calendar

_____

D. C. Docket No. 06-00100-CR-01-BBM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ULYSSES ANTWAN HARRIS,
a.k.a. Antoine Harris,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

**(May 8, 2008)**

Before TJOFLAT, ANDERSON and HULL, Circuit Judges.

PER CURIAM:

Ulysses Antwan Harris appeals his conviction for possession of a firearm by

a convicted felon, in violation of 18 U.S.C. §§ 922(g) and 924(e), and seeks a new trial on two grounds: (1) the district court erred by denying his motion to suppress a .357 caliber Magnum pistol found by an Atlanta, Georgia police officer under the floor mat in the passenger's compartment of a Yellow taxicab in which he was riding; (2) statements he made to federal ATF agents while he was being held in state custody on state criminal charges (but before he was charged in the instant case), which the court admitted into evidence, were taken in violation of his Sixth Amendment right to counsel. We address these grounds in turn.

I.

The facts giving rise to the police officer's seizure of the pistol were these. At 1:00 a.m. on May 16, 2005, Officer Min Woo Cha was on routine patrol in a high crime area where crack cocaine trafficking was routine. He observed Harris walk into a parking lot, reach behind some bushes along the fence line, remove what appeared to be a dark-colored handgun, and place it in his pocket. This caught Cha's attention because drug traffickers frequently hide drugs and handguns behind bushes. Shortly thereafter, a Yellow taxicab van arrived and picked up Harris. Cha followed the cab down a four-lane street (two lanes in each direction), and observed it change lanes without using its turn signal, in violation of Georgia law. Cha promptly pulled the cab over, explained the violation to the

2

driver, asked Harris to exit the cab, and inquired as to where he was going. Cha

also asked him if he had any drugs or weapons on his person; Harris said "no."

Harris then consented to a search of his person, and Cha found no drugs or

weapon. Cha then obtained the cab driver's consent to search the passenger

compartment of the cab, where Harris had been sitting. On lifting the floor mat,

Cha found the .357 Magnum at issue.

Harris asserts that the district court erred in admitting the pistol into

evidence because (1) Officer Cha lacked probable cause to stop the taxicab[1];

(2) Harris had a legitimate expectation of privacy in the entire passenger

compartment of the cab; and (3) the cab driver's consent was ineffective because

Harris had a superior privacy interest.

"The Fourth Amendment protects individuals from unreasonable search and

seizure." Chanthasouxat, 342 F.3d at 1275. A traffic stop, however, is

constitutional if it is either based upon probable cause to believe a traffic violation

has occurred or justified by reasonable suspicion in accordance with Terry, 392

U.S. 1, 88 S.Ct. 1868. Chanthasouxat, 342 F.3d at 1275. When determining

whether an officer had probable cause to believe that a traffic violation occurred,

---

[1] Harris contends that Officer Cha also lacked probable cause to search the cab. The district court made no finding on that issue, and the Government does not contend that Cha had probable cause to search. We therefore do not address the question of whether Cha had probable cause to effect the search of the cab's passenger compartment.

the "officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." United States v. Simmons, 172 F.3d 775, 778 (11th Cir. 1999) (quotation omitted). The Constitution also permits police officers to conduct a brief investigatory stop, Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "if they have a reasonable, articulable suspicion based on objective facts that" an individual is engaged in criminal activity. United States v. Powell, 222 F.3d 913, 917 (11th Cir. 2000). A determination of reasonable suspicion is based on the totality of the circumstances, and "[i]t does not require officers to catch the suspect in a crime. Instead, [a] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity." United States v. Acosta, 363 F.3d 1141, 1145 (11th Cir. 2004) (citations omitted). Additionally, the issue is not whether the particular officer involved "actually and subjectively had the pertinent reasonable suspicion, but whether, given the circumstances, reasonable suspicion objectively existed to justify [the investigatory stop]." United States v. Nunez, 455 F.3d 1223, 1226 (11th Cir. 2006). With the foregoing principles in hand, we assess Harris's first point: Officer Cha lacked probable cause to stop the taxicab.

Officer Cha had probable cause to stop the taxicab because he observed the taxicab commit a traffic violation when it failed to signal during a lane change.

4

Georgia law requires drivers to signal an intention to change lanes when necessary to alert other drivers. O.C.G.A. § 40-6-123(b). Cha also had reasonable suspicion to conduct an investigatory Terry stop because he witnessed Harris remove a dark object that looked like a handgun from behind some bushes immediately before getting into the taxicab.

Regarding Harris's second point, the parties dispute whether Harris had a legitimate expectation of privacy in the cab's passenger compartment, particularly the area underneath the compartment's floor mat.

The accused bears the burden of demonstrating a legitimate expectation of privacy in the area searched. See United States v. Cooper, 133 F.3d 1394, 1398 (11th Cir. 1998) (holding that the individual challenging the search has the burden of both proof and persuasion). If the accused successfully establishes an expectation of privacy, the burden then shifts to the government to prove that the search was reasonable based upon a recognized exception to the warrant requirement. United States v. Bachner, 706 F.2d 1121, 1125-26 (11th Cir. 1983). A person has a legitimate expectation of privacy if (1) he has a subjective expectation of privacy, and (2) society is prepared to recognize that expectation as objectively reasonable. United States v. Segura-Baltazar, 448 F.3d 1281, 1286 (11th Cir. 2006). "A legitimate expectation of privacy [must] be proven by factors

5

beyond mere possession, such as a right to exclude or a right to privacy." United States v. Espinosa-Orlando, 704 F.2d 507, 512 (11th Cir. 1983) (citing Rakas v. Illinois, 439 U.S. 128, 143-44 & n.12, 99 S.Ct. 421, 430-31 & n.12, 58 L.Ed.2d 387 (1978)).

Supreme Court cases suggest in dicta that a taxicab passenger may enjoy a legitimate expectation of privacy in a cab, although the Court has not defined the exact parameters of such expectation. See Katz v. United States, 389 U.S. 347, 352, 88 S.Ct. 507, 511-12, 19 L.Ed.2d 576 (1967) (noting that "[n]o less than an individual . . . in a taxicab," an individual in a telephone booth "who occupies it, shuts the door behind him, and pays the toll" is entitled to the protection of the Fourth Amendment); Rios v. United States, 364 U.S. 253, 261-62, 80 S.Ct. 1431, 1436-37, 4 L.Ed.2d 1688 (1960) (applying Fourth Amendment principles to the search of the passenger area of an occupied taxicab without addressing the occupant's expectation of privacy). Regarding passengers in a private car, the Court has held that a passenger, who has no possessory interest in the automobile, does not have a legitimate expectation of privacy in the interior of the automobile because he does not have the right to exclude others from the car. Rakas, 439 U.S. at 140, 143 n.12, 148, 99 S.Ct. at 429, 430 n.12. Of course, we de not know the effect of Rakas on Katz and Rios.

While we have established some general boundaries regarding a passenger's legitimate expectation of privacy in a private vehicle, we have not specifically addressed a taxicab passenger's standing to challenge a search of the passenger compartment of the cab. See Cooper, 133 F.3d at 1398 ("A passenger usually lacks a privacy interest in a vehicle that the passenger neither owns nor rents"). We have recognized a Fourth Amendment right to challenge the search of a hidden compartment in which there was no legitimate expectation of privacy, because the authorities gained access to the compartment through an area in which there was a reasonable expectation of privacy. United States v. Morales, 847 F.2d 671, 672-73 (11th Cir. 1988) (holding that because discovery of a hidden compartment in the floor of the crewmembers' sleeping quarters involved a search of the sleeping quarters itself, the crewmembers had "a reasonable expectation of privacy to prevent the unwarranted process of the search"). Id. at 672-73.

However, we need not resolve whether and to what extent a taxicab passenger enjoys a legitimate expectation of privacy in a cab because in this case the cab driver gave the officers consent to search the cab.

"A search of property, without warrant or probable cause, is proper under the Fourth Amendment when preceded by valid consent." United States v. Dunkley, 911 F.2d 522, 525 (11th Cir. 1990). "An officer conducting a routine

traffic stop may request consent to search the vehicle." United States v. Purcell, 236 F.3d 1274, 1281 (11th Cir. 2001). A third party who has "common authority over or other sufficient relationship to the premises or effects sought to be inspected" may give valid consent to search an area. United States v. Matlock, 415 U.S. 164, 171, 94 S.Ct. 988, 993, 39 L.Ed.2d 242 (1974). Specifically, a third party's consent is valid if he has mutual use of the property, with joint access to or control of the area for most purposes. Id. at 171 n.7, 94 S.Ct. at 993 n.7. However, "a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." Georgia v. Randolph, 547 U.S. 103, 122-23, 126 S.Ct. 1515, 1528, 164 L.Ed.2d 208 (2006). Thus, the extension of the prohibition on warrantless searches applies only to defendants who are present and actually express a refusal to consent. Id. at 121-23, 126 S.Ct. at 1527-28; see United States v. Delancy, 502 F.3d 1297, 1308 n.7 (11th Cir. 2007) (holding that Randolph was inapplicable when it was not "a situation where one resident consented and the other refused").

We have extended the Supreme Court's reasoning in Matlock to apply to consensual vehicle searches. Dunkley, 911 F.2d at 525-26. In Dunkley, we held that the driver possessed joint access and immediate control over the vehicle even though the lessee of the vehicle was a passenger. Id. at 526. Based on this joint

8

access, the driver's consent to search was valid at least in regards to the front and back seats. Id.

Assuming Harris had a legitimate expectation of privacy in the entire passenger compartment, the district court did not err by failing to suppress the pistol because Officer Cha justifiably relied on the cab driver's consent to search the area. Also, although present when the driver consented to the search, Harris never expressed any disagreement with the driver's consent; rather, he remained silent.

In sum, we find no error in the district court's admission of the pistol into evidence.

## II.

Harris's second ground for reversal and a new trial is that the statements he made to the ATF agents while he was being held in the Fulton County Jail on criminal charges brought by the State were inadmissible. Harris made the statements after waiving his Miranda rights; he argues, however, that they were inadmissible because having been provided an attorney to represent him on the state charges, his right to counsel for purposes of the agents' questioning him about his potential violation of 18 U.S.C. §§ 922(g) and 924(e) had attached.

Harris's argument turns on whether the dual sovereignty doctrine applies.

9

We answered this question in the affirmative on March 13, 2008, in <u>United States v. Burgest</u>, 2008 WL 659550 (C.A. 11 (Fla.). In that case, we held that "Burgest's prior invocation of his right to counsel for his state drug charge did not attach to the uncharged federal drug offenses when the federal agents interviewed him." <u>Id.</u> at 9.

For the foregoing reasons, Harris's conviction is

AFFIRMED.