[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-10823
Non-Argument Calendar

_____

D.C. Docket No. 4:18-cr-00100-AKK-JEO-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL PEDRO ANDRES,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Alabama

_____

(June 1, 2020)

Before BRANCH, LAGOA, and FAY, Circuit Judges.

LAGOA, Circuit Judge:

Michael Pedro Andres ("Andres") appeals his convictions and sentence for distribution of methamphetamine, conspiracy to distribute methamphetamine, and possession of methamphetamine with intent to distribute. Andres argues that the district court should have granted his concededly untimely motion to suppress because he showed good cause for its untimely filing. He also argues that the district court erred by denying him a sentence reduction for acceptance of responsibility. For the reasons discussed below, we affirm.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Bradley Bennett ("Bennett") served as a paid informant for the DeKalb County, Alabama, Sheriff's Department. During the summer of 2016, Bennett worked with Andres's cousin, Pedro Gomes Andres ("Gomes"). Bennett and Gomes socialized after work and had once used methamphetamine together.

In June 2017, Gomes called Bennett seeking help in selling a large quantity of methamphetamine. Bennett eventually contacted Gary Hill ("Agent Hill"), an agent with the DeKalb County Sheriff's drug and major crime task force who Bennet had met in 2014, and informed him of Gomes's request for help in selling methamphetamine. Agent Hill asked Bennett to obtain a sample of the methamphetamine from Gomes. Bennett then called Gomes to set up a meeting with him. Gomes arrived at the meeting in an off-white Cadillac Escalade with Andres, who Gomes introduced to Bennet as his "cousin Mike." Andres then took out a

2

sample of the methamphetamine and burned it in a pipe to show that it burned clean (which indicated the purity of the substance).  Bennett brought the rest of the sample to Agent Hill, who tested the sample to confirm that it was methamphetamine.

At the direction of local and federal law enforcement, Bennett arranged for a "controlled buy" of two ounces of methamphetamine from Gomes and Andres.  On August 1, 2017, Bennett, equipped with recording devices, met Gomes and Andres in a parking lot.  Gomes and Andres arrived at the meeting in the off-white Cadillac Escalade, with Andres as the driver.  Gomes entered Bennett's car and sold Bennett the requested methamphetamine.[1]  This exchange was recorded on video.  Lab tests later confirmed the weight and purity of the methamphetamine from this "controlled buy."

Again at the direction of law enforcement, Bennett arranged for a second "controlled buy" six days later.  Wearing a recording device, Bennett met with Gomes and Andres to purchase two ounces of methamphetamine.  Gomes and Andres arrived in the off-white Cadillac Escalade, with Andres again in the driver's seat.  Bennett entered the vehicle and purchased the two ounces of methamphetamine.  Andres received and counted the purchase money.  This

---

[1] Gomes and Andres only brought one-and-a-half ounces of the requested methamphetamine to this meeting, not the two ounces requested by Bennett.

3

exchange was also recorded on video. Lab tests later confirmed the weight and purity of the methamphetamine from this second "controlled buy."

Gomes then contacted Bennett to sell him more methamphetamine. Bennett, acting at the direction of law enforcement, arranged for a final purchase of one pound of methamphetamine on August 16, 2017. Bennett spoke to both Andres and Gomes to coordinate the purchase of the methamphetamine. Law enforcement intended this transaction to be a "buy-bust," meaning Andres and Gomes would be arrested on their way to the transaction while in possession of the methamphetamine.

On the day of the "buy-bust," Andres and Gomes told Bennett that they had the pound of methamphetamine and would meet Bennett at 4:30 p.m. in a parking lot. Bennett relayed this information to Agent Hill, who was in contact with the other law enforcement officials working on the "buy-bust."

Sergeant Justin Dake ("Sgt. Dake") was tasked with stopping Andres and Gomes before they arrived at the parking lot designated for the transaction. He met with the drug task force earlier in the day and knew that Andres and Gomes would be transporting about a pound of methamphetamine. He also knew that Andres and Gomes would be in an off-white Cadillac Escalade and knew the tag number for that vehicle. While on the route provided by the drug task force, Sgt. Dake spotted Andres and Gomes and initiated a traffic stop after observing the vehicle following too closely behind another vehicle. Sgt. Dake turned on his blue lights, but Andres

4

and Gomes kept going, passing various safe places to stop.  As Andres and Gomez were coming to a stop, Sgt. Dake saw a black object fly out of the passenger side of their vehicle.  Sgt. Dake recovered the object and identified the content by its appearance as methamphetamine.  Once the car was pulled over, Sgt. Dake identified the car's driver as Andres and the passenger as Gomes.  The content of the black object thrown out of the car was later confirmed to be 421.1 grams of methamphetamine.

Andres was indicted on four counts: one count of conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 846 and 21 U.S.C. § 841(a)(1); two counts of distribution of five grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1); and one count of possession with the intent to distribute fifty grams or more of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  The district court entered a scheduling order requiring, in relevant part, motions to suppress to be filed by June 4, 2018, and providing that "[n]o motion may be filed after the deadline absent an express statement of good cause for the delay and a statement of reasons."

The government filed an information pursuant to 21 U.S.C. § 851 disclosing that Andres had two prior convictions for felony drug offenses.  Under the law at the time, Andres faced a mandatory sentence of life imprisonment.  *See* 21 U.S.C. § 841(b)(1)(a) (2018).  Andres then moved to continue his plea hearing because of

ongoing plea negotiations and his counsel's scheduling conflicts.  The district court granted Andres's motion and rescheduled the plea hearing.

At the plea hearing, Andres decided to proceed to trial.  The district court set the trial to begin on November 5, 2018, and ordered that any motions in limine be filed at least one week beforehand.  On October 29, 2018, Andres filed a motion titled "Motion in Limine and/or Motion to Suppress," seeking suppression of the methamphetamine thrown out the Cadillac Escalade during the August 16, 2017, "buy-bust."   Andres filed that motion pursuant to  Federal Rule of Criminal Procedure 12(b)(3)(C) and argued that Sgt. Dake had no legitimate basis to stop the vehicle for following another vehicle too closely.

The district court heard argument on Andres's motion to suppress on the first day of trial.  During argument, Andres's counsel conceded that the motion was untimely but asked the district court to consider it because the delay was based on "a strategy that turned out not to be very good."  Andres's counsel explained that he "was working under the turns out to be mistaken impression that this case would resolve itself somewhere down the road. . . . [The government] gave us every opportunity in the world to help ourself, which we were unable to do."  Turning to the merits of Andres's motion, his counsel argued that aerial footage of the traffic stop would show that Andres was not following too closely.  Therefore, according to Andres, Sgt. Dake's traffic stop was pretextual and meant only to search his

vehicle for narcotics, so any evidence arising from the stop—even if thrown out of the vehicle—must be suppressed.

The district court denied Andres's motion to suppress, finding that the motion was untimely and that Sgt. Dake was justified in stopping Andres because of the traffic violation and the ongoing criminal investigation. The district court also found that Andres abandoned the methamphetamine by throwing it out of the vehicle and therefore lacked standing to suppress the evidence.

The government then presented its case against Andres. The jury convicted Andres on all counts in the indictment directed against him.

After Andres's trial, 21 U.S.C. § 841(b)(1)(A) was amended to lower Andres's mandatory minimum sentence to 300 months. *See* 21 U.S.C.A. § 841(b)(1)(A) (2019) (effective December 21, 2018). The U.S. Probation Officer's presentence investigation report ("PSR") calculated Andres's imprisonment range as 360 months to life under the U.S. Sentencing Guidelines. The PSR assigned Andres a total-offense level of 37, including a base-offense level of 34 and a three-point adjustment for his two prior drug convictions. The PSR did not include any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1.

Andres objected to the PSR's failure to include an adjustment for acceptance of responsibility, claiming that he went to trial to preserve his challenge to the suppression ruling and his mandatory life sentence required by the applicable statute

7

at the time. He claimed that he never denied responsibility for his conduct and that, at the sentencing hearing, he would admit to his criminal activity and accept responsibility for his conduct. Andres asserted that if the mandatory minimum had been changed before trial, he would have pled guilty and requested the revised mandatory minimum of 300 months of imprisonment. Andres's counsel also noted that he and Andres met with the government before trial and "pretty much admitted to his conduct." He explained that his trial strategy was to convince the jury that Andres was "guilty of lesser crimes and not the more serious crimes, but [he] really had no defense." The government, however, disputed that Andres admitted to everything and considered him to not be fully truthful at their meeting.

The district court overruled Andres's objection to the PSR's finding that he was not entitled to an acceptance of responsibility reduction. The district court noted:

> I'm constrained in part by not having any documents before me where these issues were preserved ahead of trial or any statements made ahead of the trial saying that this defendant is going to trial solely to preserve the constitutional issues or to challenge a statute.

> Because I am told that this is a rare situation where a defendant who has gone to a trial can still get the acceptance of responsibility credit and that the acceptance of responsibility credit is not intended to apply to a defendant like your client who puts the government to its burden of proof of trial, I will overrule the objection.

During his allocution, Andres accepted responsibility for his criminal conduct and noted that he went to trial because he was facing a life sentence. The district

court sentenced Andres to 360 months of imprisonment and ten years of supervised release. This timely appeal ensued.

## II.    STANDARDS OF REVIEW

We review for abuse of discretion the denial of motion to suppress on the grounds of timeliness. *See United States v. Smith*, 918 F.2d 1501, 1509 (11th Cir. 1990). A court may consider an untimely pretrial motion including a motion to suppress "if the party shows good cause." Fed. R. Crim. P. 12(c)(3). However, when a party fails to establish good cause for an untimely motion under Federal Rule of Criminal Procedure 12, the issue in the motion is not preserved and our review is limited to a plain error analysis. *See United States v. Bowers*, 811 F.3d 412, 421 (11th Cir. 2016).

## III.    ANALYSIS

Andres raises two points on appeal. First, he argues that we should reverse his convictions because the district court erred in denying his "Motion in Limine and/or Motion to Suppress."[2] Second, Andres contends that he is entitled to a two-point reduction under the Sentencing Guidelines because he demonstrated

---

[2] Although Andres refers to this motion in his brief as a "motion in limine," the relief he sought was suppression of evidence pursuant to Federal Rule of Criminal Procedure 12(b)(3)(C). Moreover, on appeal, Andres concedes that the motion was subject to the district court's scheduling order and Federal Rule of Criminal Procedure 12(c)(3). We therefore reject Andres's characterization of the motion at issue as a motion in limine.

acceptance of responsibility to the district court.  As discussed below, neither argument has merit.

### A. The Motion to Suppress

Federal Rule of Criminal Procedure 12 provides that certain pretrial motions, including motions for suppression, must be filed before trial and permits a district court to fix the deadline for such pretrial motions.  Fed. R. Crim. P. 12(b)(3)(C), (c)(1).  Furthermore, "[i]f a party does not meet the deadline for making a Rule 12(b)(3) motion, the motion is untimely. But a court may consider the defense, objection, or request if the party shows good cause."  Fed. R. Crim. P. 12(c)(3).

Here, Andres concedes that his motion was untimely under both the scheduling order and Rule 12.  Instead, Andres argues that he showed good cause for his delay because his decision to not timely file a motion to suppress was based on his belief that he would be subject to mandatory life imprisonment, that he had nothing to lose by going to trial, and that the case would resolve itself before having to file a suppression motion.

Andres, however, provides no authority for his argument that a defendant's tactical decision constitutes good cause for knowingly defying a scheduling order.  Indeed, he can provide none because the law is clear that "[n]o good cause exists if 'the defendant had all the information necessary to bring a Rule 12(b) motion before the date set for pretrial motions, but failed to file it by that date.'"  *United States v.*

*Curbelo*, 726 F.3d 1260, 1267 (11th Cir. 2013) (quoting *United States v. Seher*, 562 F.3d 1344, 1359 n.15 (11th Cir. 2009)).  If Andres's pretrial actions (and inaction) were motivated by his belief that he was facing a mandatory life sentence and that he would be taking the case through trial and appeal, it was incumbent on Andres to timely file his motion to suppress and properly preserve the issue for review.[3] Neither a strategic decision nor inadvertence constitutes good cause.  Because Andres failed to establish good cause sufficient to overcome the untimely filing of his motion to suppress, we find that the district court did not abuse its discretion in denying the motion as untimely.

Next, we turn to the question of whether the methamphetamine should have been suppressed.  Because Andres did not preserve this issue, our review is limited to a plain error analysis.  *See Bowers*, 811 F.3d at 421.  "To prevail under the plain error standard, an appellant must show: (1) an error occurred; (2) the error was plain; (3) it affected his substantial rights; and (4) it seriously affected the fairness of the judicial proceedings."  *United States v. Ramirez–Flores*, 743 F.3d 816, 822 (11th Cir. 2014) (quoting *United States v. Pena*, 684 F.3d 1137, 1151 (11th Cir. 2012)).  "An error is 'plain' if controlling precedent from the Supreme Court or the Eleventh

---

[3] Indeed, Andres's counsel represented to the district court that Andres's defense strategy was to try the case and preserve for appeal the district court's suppression ruling and a constitutional challenge to the mandatory life sentence imposed by the version of 21 U.S.C. § 841 in place at the time.

11

Circuit establishes that an error has occurred." *Id.* (quoting *United States v. Lejarde–Rada*, 391 F.3d 1288, 1291 (11th Cir. 2003)).

A district court must suppress evidence obtained in violation of a person's Fourth Amendment rights. *United States v. Gilbert*, 942 F.2d 1537, 1541 (11th Cir. 1991). A traffic stop constitutes an unreasonable seizure unless it is supported by reasonable suspicion of criminal activity or probable cause that a traffic violation has occurred. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). A law enforcement officer's subjective motive in making a stop does not invalidate objectively justifiable grounds for making the stop. *Id.* at 1337–38. Moreover, officers may conduct a brief investigatory stop "'if they have a reasonable, articulable suspicion based on objective facts that' an individual is engaged in criminal activity." *Id.* at 1337 (quoting *United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000)). In deciding whether a search or seizure was justified, this Court may look to the collective knowledge of the law enforcement officials involved in an investigation "if they maintained at least a minimal level of communication during their investigation." *United States v. Willis*, 759 F.2d 1486, 1494 (11th Cir. 1985).

As to the merits of his suppression motion, Andres argues that Sgt. Dake did not have reasonable suspicion or probable cause to stop him based on the collective knowledge of the officers involved in the "buy-bust." He claims that the task force

12

members had no reasonable belief that Andres was transporting methamphetamine because the officers did not observe the loading of methamphetamine into the vehicle. He also claims that they could not have reasonable believed that Andres was driving with the requested methamphetamine because the prior "controlled buys" were for substantially less methamphetamine, making it unlikely that Andres and Gomes had the pound of methamphetamine requested by Bennett.

We find this argument without merit. Notably, Andres does not dispute the district court's finding that Sgt. Dake had probable cause to stop Andres because of the traffic infraction he observed, i.e., the vehicle following too closely to another vehicle. Moreover, Sgt. Dake was in constant contact with the officers involved in the investigation of Andres and Gomes, was briefed earlier in the day about the "buy-bust" operation, and knew the description and tag of the vehicle Andres would be driving. The officers running the investigation had overseen the two prior "controlled buys" of methamphetamine from Andres and Gomes and observed the communications between Bennett and Gomes. Bennett also informed the officers once Andres and Gomes advised that they were on their way to the meeting place with the methamphetamine. We therefore find that the officers' collective knowledge justified Sgt. Dake's stop of Andres's vehicle, which matched the description provided to him. For this reason, and because Andres does not challenge the district court's finding that Sgt. Dake was justified in stopping Andres because

13

of the traffic infraction, we do not find plain error in the district court's denial of Andres's motion to suppress.[4]

### B. Reduction of Sentence for Acceptance of Responsibility

Andres next argues that, if this Court does not overturn his convictions, his sentence must be reduced under the Sentencing Guidelines because of his acceptance of responsibility. Andres claims that he went to trial because he faced a mandatory life sentence under the law at the time and wanted to preserve a constitutional challenge to such life imprisonment for a nonviolent and noncapital offense. He further claims that he never denied responsibility for his criminal conduct and met with the government before trial to fully admit his role in the charged offenses.

We review a district court's determination of a defendant's acceptance of responsibility for clear error. *United States v. Williams*, 627 F.3d 839, 844 (11th Cir. 2010). Under the Sentencing Guidelines, a defendant is entitled to a two-point reduction of his offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). "[T]he reduction is intended to reward defendants who express contrition for their wrongdoing and evidence a desire to reform their conduct." *Williams*, 627 F.3d at 844. To determine whether the two-point reduction applies, the district court must consider, among other things,

---

[4] Because we find that Sgt. Dake was justified in stopping Andres, we need not address whether Andres abandoned the methamphetamine, as Andres's argument against abandonment rested on the propriety of Sgt. Dake's stop.

whether the defendant "truthfully admitt[ed] the conduct comprising the offense(s) of conviction, and truthfully admitt[ed] or not falsely den[ied] any additional relevant conduct for which the defendant is accountable under § 1B.3 (Relevant Conduct)," as well as "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."  U.S.S.G. § 3E1.1 cmt. n.1(A), (H).  Because the district court is in a "unique position to evaluate a defendant's acceptance of responsibility," we give the district court's decision "great deference on review." U.S.S.G. § 3E1.1 cmt. n.5; *accord United States v. Gonzalez*, 70 F.3d 1236, 1239 (11th Cir. 1995) ("[T]his determination is entitled to great deference on review." (quoting *United States v. Pritchett*, 908 F.2d 816, 824 (11th Cir. 1990))).

A defendant's decision to stand trial "does not automatically preclude a defendant from consideration for such a reduction."  U.S.S.G. § 3E1.1 cmt. n.2.  "In rare situations a defendant may clearly demonstrate an acceptance of responsibility for his criminal conduct even though he exercises his constitutional right to a trial." *Id*.  While "[t]his adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse," it may apply "where a defendant goes to trial to assert and  preserve issues that do not relate to factual guilt."  *Id*.  For such defendants, the acceptance-of-responsibility determination "will be based primarily upon pre-trial statements and conduct."  *Id*.

15

A district court errs when it believes that, as a matter of law, it is prohibited from granting a reduction based on acceptance of responsibility because the commentary to the Guidelines "does not include any conduct that would automatically preclude a defendant from receiving the reduction." *United States v. Mathews*, 874 F.3d 698, 709 (11th Cir. 2017).

Here, Andres did not plead guilty and instead held the government to its burden at trial, filing his motion to suppress just days before the outset of trial. While Andres claims that he admitted to his wrongdoing to the government before trial, this purported admission was not reflected at trial. Instead, Andres maintained that he was innocent of the charges arising out of the attempted sale of the pound of methamphetamine and sought to exclude the evidence necessary for those charges— the methamphetamine itself. Andres therefore did not accept responsibility for the criminal charges against him and instead raised issues relating to his factual guilt. *See Gonzalez*, 70 F.3d at 1239–40 (rejecting claim of acceptance of responsibility where defendant "attempted to avoid a determination of factual guilt" by not pleading guilty and instead seeking to exclude the essential evidence against him).

Because Andres seeks an acceptance of responsibility reduction despite defending the case through trial, we consider whether his is one of the "rare situations" discussed in the commentary to the Sentencing Guidelines. *See* U.S.S.G. § 3E1.1 cmt. n.2. While Andres argues that he took the case to trial to preserve his

challenge to the life sentence he thought would be imposed under 21 U.S.C. § 841, the record does not support this conclusion. Instead, Andres relies on disputed pre-trial statements made to the government and conduct not memorialized before the district court. We therefore do not find clear error in the district court's finding that Andres did not accept responsibility for purposes of U.S.S.G. § 3E1.1.

Andres also suggests that the district court erred because it believed it lacked the authority to grant a reduction for acceptance of responsibility. While "a court errs if it believes that it does not have the authority to grant such a downward reduction," *Mathews*, 874 F.3d at 709, we find nothing in the record demonstrating that the district court believed that it was precluded, as a matter of law, from granting Andres the requested reduction.

## IV.    CONCLUSION

Based on the foregoing reasons, we affirm Andres's convictions and sentences.

**AFFIRMED.**

17