[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14642
Non-Argument Calendar

_____

D.C. Docket No. 1:19-cr-00157-LSC-JHE-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

DUSTIN ALLEN ROSIAN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(July 29, 2020)

Before WILLIAM PRYOR, Chief Judge, WILSON and ANDERSON, Circuit
Judges.

PER CURIAM:

Dustin Rosian, who conditionally pleaded guilty to being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1), appeals the denial of his motion to suppress. Rosian argues that law enforcement officers lacked probable cause to stop his vehicle, the officers unlawfully prolonged the traffic stop, and their continued questioning about the contents of his vehicle after he had been searched was unreasonable. We affirm.

The denial of a motion to suppress presents a mixed question of law and fact. *United States v. Ransfer*, 749 F.3d 914, 921 (11th Cir. 2014). We review findings of fact for clear error and the application of the law to those facts *de novo*. *Id.* We construe all facts in the light most favorable to the government as the party who prevailed in the district court. *Id.*

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). A police officer may stop a vehicle when he reasonably "'believe[s] that a driver is violating any one of the multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles." *United States v. Strickland*, 902 F.2d 937, 940 (11th Cir. 1990) (alteration adopted) (quoting *Delaware v. Prouse*, 440 U.S. 648, 661 (1979)). An officer satisfies that standard when he observes a traffic infraction. *See United States v. Harris*, 526 F.3d 1334, 1337-38 (11th Cir. 2008).

The district court did not err in determining that the officers lawfully stopped Rosian for a traffic violation. Alabama law requires that "[e]very motor vehicle operator . . . shall at all times keep attached and plainly visible . . . a license tag or license plate." Ala. Code § 32-6-51. Officers Lacy Blankenship and Jonathan Yarbrough testified that mud covered Rosian's license plate and made its tag number indecipherable from more than a few feet away. And Blankenship's body camera recorded Rosian's passenger, Amanda Miller, exiting the vehicle during the stop and washing off a thick layer of dirt that covered the tag number. The officers had cause to believe that Rosian's license plate was not "plainly visible."

Rosian argues that his license plate must have been "plainly visible" because the officers were able to read the tag number when parked behind his vehicle, but even if we assume, like the district court, that the officers misinterpreted section 32-6-51 as containing a distance requirement, their error does not taint the stop. The basis for a traffic stop "can rest on a mistaken understanding of the scope of a legal prohibition." *Heien v. North Carolina*, 574 U.S. 54, 60 (2014). As we stated when reviewing the lawfulness of a stop based on section 32-6-51 in *United States v. McCullough*, 851 F.3d 1194 (11th Cir. 2017), "an officer conducts a valid traffic stop even if he makes an objectively reasonable mistake of law." *Id.* at 1201. In *McCullough*, we concluded that an officer's

3

decision to stop a driver whose license plate cover obscured the state name but not the tag number was objectively reasonable because the "text le[ft] open the possibility that more than the alphanumeric symbols must be plainly visible." *Id.* Section 32-6-51 also "leaves open the possibility" that, in the words of the district court, "a tag [must be] free enough of grime that it [can] be read from a distance greater than a few feet." So Blankenship and Yarbrough could be correct in believing that a tag number must be legible at a distance to be "plainly visible." But even if the officers are mistaken, their interpretation of section 32-6-51 is reasonable. Officers Blankenship and Yarbrough made a valid traffic stop.

The district court also did not err in determining that the officers were entitled to prolong the traffic stop based on their "articulable suspicion of other illegal activity." *United States v. Purcell*, 236 F.3d 1274, 1277 (11th Cir. 2001). Blankenship and Yarbrough saw Rosian's vehicle while surveilling a residence that a fellow officer and their supervisor reported as being used for drug activities. *See United States v. Kirk*, 781 F.2d 1498, 1504-05 (11th Cir. 1983) (stating that police officers are entitled to rely on information from other officers). The two officers watched Rosian and Miller arrive at the residence and depart five minutes later. During the traffic stop, while Rosian searched for proof of insurance, he and Miller stated that their point of origin was about 45 minutes away. Blankenship noticed that Miller had sores on her face, sunken cheeks, and bad teeth, like a drug

4

user, and after she exited the vehicle to clean the license plate, she volunteered that she had abused heroin in the past and that Rosian had been in and out of prison. Reasonable suspicion exists when an officer "ha[s] a 'particularized and objective basis for suspecting the person stopped of criminal activity.'" *United States v. Campbell*, 912 F.3d 1340, 1349 (11th Cir. 2019) (quoting *Navarette v. California*, 572 U.S. 393, 396 (2014)). The officers amassed sufficient facts during the lawful traffic stop to develop a reasonable suspicion that Rosian and Miller had engaged in a drug transaction, which justified detaining the couple to investigate further.

The district court correctly determined that the officers were entitled to continue questioning Rosian despite finding no contraband on him or Miller during a pat down search. Officers have a duty to investigate suspicious circumstances that come to their attention during a traffic stop. *United States v. Harris*, 928 F.2d 1113, 1117 (11th Cir. 1991). During the pat down, the lawfulness of which Rosian does not dispute, he gave an explanation for the trip different from the reason given earlier by Miller. When Blankenship approached Rosian's vehicle, Miller stated that they had given a friend a ride to the suspected drug house. But during the pat down search, Rosian stated that he and Miller traveled to the area to fix a water heater and pick up digital versatile disks. Rosian's and Miller's inconsistent stories strengthened the officers' suspicions that the couple had engaged in a drug transaction, which entitled the officers to question Rosian to determine whether the

5

vehicle contained evidence of that illegal activity. When asked if there was anything illegal in his vehicle, Rosian admitted that he had a gun under his seat. Based on Miller's statement that Rosian had a criminal record, the officers had probable cause to arrest him for being a felon in possession of a firearm.

We **AFFIRM** the denial of Rosian's motion to suppress.