[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10480

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

DEONDRE BAIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:23-cr-20048-RKA-1,
1:13-cr-20551-RKA-1

_____

Before JORDAN, NEWSOM, and GRANT, Circuit Judges.

PER CURIAM:

Deondre Bain appeals his convictions for possession of a firearm and ammunition by a convicted felon and illegal possession of a machine gun. He challenges the constitutionality of his conviction under the Second Amendment and asserts that the district court erred in denying his motion to suppress.

**I**

On January 19, 2023, Miami Gardens police stopped and searched Mr. Bain's vehicle. The five participating officers testified to the following chain of events.

Officer Derek Rodriguez recognized a Yukon vehicle that had been involved in a homicide in 2021, and identified Mr. Bain as the driver. Officer Rodriguez had arrested him in 2013 for possession of a firearm by a convicted felon. Officer Rodriguez began following the Yukon and noticed that it had a plastic license plate cover. Although the tag remained legible, he believed it constituted a traffic violation. When Mr. Bain pulled into a gas station, Officer Rodriguez informed his colleagues of Mr. Bain's location and that he had a felony record and was known to carry firearms. Officer Rodriguez did not mention the alleged traffic violation relating to the tag.

Detective Michael Ruiz, joined by Detective Onassis Perdomo and Special Agent Alexis Kelly in an unmarked police car,

arrived and observed a Yukon matching Officer Rodriguez's description back out of a handicap parking space in front of a cell phone store, which Detective Perdomo claimed was a hub for narcotics transactions. Detective Perdomo noticed that the Yukon was missing a rearview mirror, and that it appeared to have unlawfully dark window tints. Detective Ruiz testified that he did not observe the alleged license plate violation prior to the stop. Detective Ruiz communicated Mr. Bain's location to other officers, and a marked police unit activated its lights and sirens to initiate the stop. Detectives Ruiz and Perdomo and Agent Kelly pulled over as well.

While approaching the vehicle, Detective Ruiz observed Mr. Bain lean down and make furtive movements as though hiding something. Suspecting that Mr. Bain might be armed, Detective Ruiz drew his firearm and commanded Mr. Bain to show his hands or else he would shoot him. Mr. Bain did not immediately comply, but ultimately exited the Yukon with empty hands.

Detective Perdomo smelled marijuana and saw what he believed to be marijuana residue on the seats and floorboard and plastic bags "used to package narcotics" on the driver's seat. Detective Ruiz testified that "due to the totality of the circumstances of him hiding his hands, [and] the strong smell of marijuana," the officers searched the vehicle to look for narcotics. After initiating the search, officers observed that the cupholder was ajar. They lifted it and recovered a firearm that had been modified into a fully automatic machine gun. They also found what they believed to be the butt of a marijuana cigarette on the armrest and marijuana "shake"

on the floorboard, although they never collected and tested it to confirm that it was marijuana.

The officers arrested Mr. Bain and issued him citations for having an obstructed tag, parking in a handicap space without a permit, and missing a rearview mirror.

In February 2023, a federal grand jury charged Mr. Bain with possession of a firearm and ammunition by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 1) and illegal possession of a machinegun in violation of 18 U.S.C. § 922(o)(1) (Count 2). Mr. Bain moved to dismiss Count 1, arguing that § 922(g)(1) violated the Second Amendment. The government responded in opposition and the district court denied the motion in a paperless order.

Mr. Bain filed a motion to suppress all the evidence obtained during the search, alleging that the stop and the search were unlawful. The district court denied the motion after an evidentiary hearing. It credited the officers' testimony and found that there were four independent grounds for the stop— parking in a handicap spot without a permit, a missing rearview mirror, illegally tinted windows, and the license plate cover—each of which was sufficient and "none of which had to do with the defendant's history of gun possession or gun use." D.E. 82 at 163.

The district court also found that the officers had probable cause to search the car. It concluded that the seven reasons provided for the search—Mr. Bain's criminal history involving guns, his known membership in a gang, his furtive movements, his refusal to immediately show his hands upon command, the smell of

marijuana, the sight of marijuana, and the fact that the cup holder was ajar—"together certainly gave the officers more than enough probable cause to then search the car[.]" *Id.* at 172–77. Responding to Mr. Bain's argument that the smell of marijuana alone cannot alone establish probable cause in the wake of Florida's legalization of hemp and of marijuana for medical use, the district court found that officers may continue to assume that the marijuana is probably illegal unless there is evidence of a medical license. The court also found it "very likely . . . what the officers were witnessing was not hemp but marijuana[,]" and noted that multiple officers on the scene were cross-designated federal agents authorized to enforce the federal ban on marijuana. *See id.* at 178–79.

Based on its findings and conclusions, the district court denied the motion to suppress. Mr. Bain filed a motion for reconsideration, which the district court denied in a paperless order.

Mr. Bain proceeded to trial and was convicted on both counts and sentenced to 168 months of imprisonment, followed by 3 years of supervised release.

## II

We generally review the constitutionality of a statute *de novo*. *See United States v. Gruezo*, 66 F.4th 1284, 1292 (11th Cir. 2023).

Because rulings on motions to suppress evidence present mixed questions of law and fact, we review the district court's factual findings for clear error and the application of the law to the facts *de novo*. *See United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th

Cir. 2012).  We afford substantial deference to the factfinder's credibility determinations.  *See id.* at 1303; *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002).

## III

### A

Mr. Bain challenges the constitutionality of 18 U.S.C. § 922(g)(1), which prohibits anyone who has been convicted of a crime punishable by more than one year of imprisonment from possessing a firearm.  He argues that this prohibition violates the Second Amendment.  But that argument is foreclosed by this Circuit's recent decision in *United States v. Dubois*.  *See* 139 F.4th 887, 892–94 (11th Cir. 2025) (concluding that neither *United States v. Rahimi*, 602 U.S. 680 (2024), nor *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), abrogated this court's holding in *United States v. Rozier*, 598 F.3d 768, 770–71 (11th Cir. 2010), that § 922(g)(1) is constitutional under the Second Amendment).

### B

Mr. Bain next challenges the district court's denial of his motion to suppress.  The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause[.]" U.S. Const. amend. IV.  Traffic stops are seizures under the Fourth Amendment.  *See Delaware v. Prouse*, 440 U.S. 648, 653 (1979). When determining whether an officer had probable cause or reasonable suspicion, we ask if "the circumstances, viewed

objectively, justif[ied] that action." *Whren v. United States*, 517 U.S. 806, 813 (1996). "[T]he officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008) (citation and quotation marks omitted). An officer's mistake of fact or law about a possible violation may justify a traffic stop, so long as the mistake is objectively reasonable. *See Heien v. North Carolina*, 574 U.S. 54, 60–61, 66 (2014).

**1**

To justify a stop for a traffic violation, the officer must have reasonable suspicion—that is, a "particularized and objective basis for suspecting the person stopped of criminal activity." *United States v. Campbell*, 26 F.4th 860, 880 (11th Cir. 2022) (en banc) (citation and quotation marks omitted). An officer has reasonable suspicion to initiate a traffic stop when he observes a traffic violation. *See, e.g., Harris*, 526 F.3d at 1338 (holding that an officer had reasonable suspicion to stop a vehicle that failed to signal a lane change).

Mr. Bain contends that none of the proffered rationales— parking in a handicap spot without a permit, a missing rearview mirror, the illegally tinted windows, or the license plate cover— established reasonable suspicion to warrant a stop. We disagree.

First, Mr. Bain argues that there was no reasonable suspicion that he violated Fla. Stat. § 316.1955(1) because the officers only witnessed his vehicle backing out of the handicap space—not stopping, standing, or parking in the space in violation of the statute. Second, he contends that the officers failed to establish a violation

of Fla. Stat. § 316.294 because the statute does not require the mirror to be to be affixed to the front windshield—it only requires a mirror that "reflect[s] to the driver a view of the highway for a distance of at least 200 feet to the rear of the motor vehicle." He contends that he complied with this requirement by placing the rearview mirror on the dashboard, and alternatively that sideview mirrors alone satisfy the statutory requirement. Third, Mr. Bain asserts that officers did not observe the alleged tinted window violation until *after* initiating the stop, so it could not have served as a basis for the stop. Nor, he says, did the officers test the windows for illegal tints or issue a citation for this alleged offense. Fourth, he maintains that there was no reasonable suspicion to stop the Yukon for a violation of Fla. Stat. § 316.605 because the statute's purpose is to ensure that license plates are not obscured, and the Yukon's license plate remained clearly legible beneath a transparent cover.

Under Florida law, it is "unlawful for any person to stop, stand, or park a vehicle within, or to obstruct" a handicap parking spot without a disabled parking permit or license plate. *See* Fla. Stat. § 316.1955(1). Based on seeing the Yukon backing out of a handicap spot, the officers had reason to believe that Mr. Bain had violated § 316.1955 and therefore had reasonable suspicion to stop his vehicle. *See, e.g., Campbell*, 26 F.4th at 880–81 (holding that a minor traffic violation can establish reasonable suspicion to stop a driver). In a case in which officers stopped a defendant after they observed his vehicle stop in a handicap parking spot for two minutes, Florida's Sixth District Court of Appeal overruled the trial

court's grant of a motion to suppress, holding that there was probable cause to believe that the defendant had violated § 316.1955. *See State v. Diaz*, 395 So.3d 622, 625–26 (Fla. 6th DCA 2024).

Mr. Bain's contention that the officers only observed the Yukon backing out of the space does not alter our conclusion. Officers need not be certain of a violation, so long as they have reason to believe it probable that a violation occurred. *See Harris*, 526 F.3d at 1337 ("A determination of reasonable suspicion . . . does not require officers to catch the suspect in a crime.") (citation and quotation marks omitted). *See also United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2023) ("[I]f an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable."). Moreover, to back out of the handicap spot the Yukon must have first been stationed in that spot. Because the officers had a particularized and objective basis for suspecting that Mr. Bain violated § 316.1955, we need not reach the alternative bases for the stop.

**2**

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnotes omitted). One exception to the warrant requirement is the automobile exception, which "allows the police to conduct a search of a vehicle if (1) the vehicle is readily mobile; and (2) the police have probable cause for the search."

*United States v. Lindsey*, 482 F.3d 1285, 1293 (11th Cir. 2007). Mr. Bain does not contest that his Yukon was readily mobile.

"Probable cause exists where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Jimenez*, 780 F.2d 975, 978 (11th Cir. 1986) (citation and quotation marks omitted). Officers need not "rule out . . . innocent explanation[s]" for a suspect's conduct in order to find probable cause. *See District of Columbia v. Wesby*, 583 U.S. 48, 61 (2018).

Mr. Bain first challenges the district court's findings of fact, noting that numerous officers pulled him over for an alleged minor traffic violation. He suggests that the officers were dishonest about their real motivations for the stop and search and that this undermined their overall credibility. He argues that the officers' testimony that green residue seen from outside of the car served as a basis for the search was not credible because they did not ultimately collect it.

A district court's credibility findings are entitled to substantial deference, and we will not disturb a credibility finding "unless it is contrary to the laws of nature, or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *Ramirez-Chilel*, 289 F.3d at 749 (citation and quotation marks omitted). Mr. Bain has not satisfied this high standard. We therefore

conclude that the district court did not clearly err in crediting the officers' testimony.

To the extent that Mr. Bain is arguing that the officers' purported reasons for the stop were pretextual, his claim fails because we generally do not look to subjective intentions of officers in determining whether a Fourth Amendment violation occurred. *See Whren*, 517 U.S. at 813. "When determining whether an officer had probable cause to believe that a traffic violation occurred, the officer's motive in making the traffic stop does not invalidate what is otherwise objectively justifiable behavior under the Fourth Amendment." *Harris*, 526 F.3d at 1337 (citation and quotation marks omitted). *See also United States v. Holloman*, 113 F.3d 193, 194 (11th Cir. 1997) ("[U]lterior motives may [not] invalidate police conduct that is justified on the basis of probable cause[.]").

Mr. Bain contends that the smell of marijuana alone no longer serves as a sufficient basis for probable cause now that Florida has legalized marijuana for medical purposes, as well as hemp. *See* Fla. Stat. §§ 381.986, 581.217. He points to Detective Ruiz's testimony that the state attorney circulated a memorandum instructing officers that hemp looks and smells the same as marijuana and that the sight and smell of marijuana alone was no longer enough to establish probable cause.

As noted earlier, the district court found that the seven reasons provided for the search—Mr. Bain's criminal history involving guns, his known membership in a gang, his furtive movements, his refusal to immediately show his hands upon command, the smell

of marijuana, the sight of marijuana, and the fact that the cup holder was ajar—together established probable cause to search the Yukon.  Mr. Bain's argument focuses only on the marijuana, and he does not address the other bases that the government cites as establishing probable cause.  We note that the officers only observed the ajar cupholder after initiating the search, so this could not have constituted a basis for probable cause.  Nonetheless, even if we put aside the marijuana, we do not believe that the district court erred in finding that the officers had probable cause to search the Yukon based on the totality of the other circumstances.  Probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Wesby*, 583 U.S. at 57 (internal quotation marks and citation omitted).  Having witnessed an individual known to illegally possess guns refuse to immediately comply with commands to show his hands and make movements suggesting that he was hiding something, the officers could reasonably conclude that Mr. Bain had contraband inside his car.  *See United States v. Clark,* 559 F.2d 420, 424 (5th Cir. 1977) ("In determining whether there was reasonable cause to believe the vehicle contained contraband, we look to the totality of the circumstances and the inferences that flow therefrom.").

## IV

We affirm Mr. Bain's conviction.

**AFFIRMED.**